.the State, we think the State can now seize adulterated or mis-branded intoxicating liquors wherever it can find them within its territory, even in the possession of an interstate carrier. Such liquors have now no federal protection.

---

### STATE OF MAINE

*vs.*

### INTOXICATING LIQUORS, GRAND TRUNK RAILWAY OF CANADA, Claimant.

### Androscoggin.    Opinion November 23, 1909.

*Interstate Commerce. Intoxicating Liquors. Same Seizable After Delivery to Consignee. Delivery. Quantity of Same May be Sufficient Evidence of Intent to Sell Same Unlawfully.*

1. When ten cases containing one hundred and twenty quart bottles of whiskey are deposited in one lot, the quantity alone in the absence of any other explanation is sufficient evidence that the whiskey was intended for unlawful sale.

2. When merchandise has been brought to its place of destination by a common carrier, and the consignee or his agent presents the bill of lading to the carrier and receipts for all the merchandise, there is a delivery to the consignee of all the merchandise though a part of it is left on the premises of the carrier.

3. If such merchandise was brought from another State by an interstate common carrier such delivery subjects it to the laws of the State free from the operation of the commerce clause of the federal constitution.

On report.    Judgment for the State.

Search and seizure process issued by the Lewiston Municipal Court whereby certain liquors were seized at the depot of the

Grand Trunk Railway Company in Lewiston. These liquors were duly libelled and the Grand Trunk Railway Company appeared as claimant. The liquors were declared forfeited and the claimant appealed to the Supreme Judicial Court. After the evidence had been taken out in the Supreme Judicial Court, the case was reported to the Law Court for determination. The report states the material facts as follows :

"It is admitted that Charles Sabourin, deputy sheriff, on the 14th day of January, 1909, seized 120 bottles, each containing one quart of whiskey, at the depot of the Grand Trunk Railway Company, on the east side of Oxford Street, in Lewiston.

"It is admitted that these goods came from New York, in the State of New York, on a through bill of lading, under a through rate, consigned to one J. Hume. The goods arrived at Lewiston, on January 1, 1909. On Jan. 8, 1909, a bill of lading covering this shipment was presented to the Grand Trunk Railway Company's office by one of the drivers of the Hoyt's Express Company, of Lewiston, who at that time receipted for the entire 22 cases of whiskey and took with him at the time 12 cases, leaving the remaining cases in the freight shed of the railroad company where they remained until seized by the officer on the morning of Jan. 14."

The case is stated in the opinion.

*Frank A. Morey*, County Attorney, for the State.

*White & Carter*, for claimant.

SITTING : EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, BIRD, JJ.

EMERY, C. J. Ten cases containing one hundred and twenty quart bottles of whiskey consigned to J. Hume, were seized at the depot of the Grand Trunk Railway Company in Lewiston, and were duly libelled and are claimed by that railroad company.

The first question is whether the whiskey was intended for unlawful sale. Unexplained, we think the quantity is sufficient evidence of such intention, and no explanation is offered.

The next question is whether at the time of seizure the whiskey was so far undelivered and in the custody of the railroad company

as an interstate common carrier as to be within the protection of the commerce clause of the Federal Constitution. Twenty-two cases were shipped from New York and arrived at Lewiston, January 1, 1909. On January 8, 1909, one of the drivers of Hoyt's Express Co. presented the bill of lading and receipted for all the whiskey and took away twelve cases, leaving ten cases in the freight shed of the railroad company where they remained for six more days when they were seized by the officer.

The question is a federal one but we do not find the federal courts to have held that intoxicating liquors are under federal protection so long as they remain upon the premises of the interstate carrier. In *Heyman* v. *Southern Railway Company*, 203 U. S. 270-276, the court was careful to say it did not decide that the federal protection would not be lost where the consignee, after notice, designedly left the liquors in the hands of the carrier for an unreasonable time. The locality of the liquors is not made the test. All that the federal courts seem to require is that the liquors shall once have been turned over to and accepted by the consignee. This may occur without any removal of the liquors themselves from the freight sheds of the carrier, and we think it did occur in this case. In *Knowles* v. *Atlantic & St. L. R. R. Co.*, 38 Maine, 55, the merchandise had not even been unloaded from the cars, but the consignee was notified of its arrival and that it was at his risk. He acknowledged he had received it in good order and requested it be allowed to remain on the cars for a time. Held that the transit was ended and the liability was at an end. In *Whitney Co.* v. *Richmond & Danville R. R. Co.*, (So. Carolina) 17 S. E. Rep. 147, cotton had been transported by the railroad company and the car containing it had been placed upon a side track for the convenience of the consignee, who delivered to the railroad company the way bill as a receipt, and removed part of the cotton. Held that all the cotton had been delivered. In *C. D. Kenny Co.* v. *Atlanta & W. P. R. R. Co.*, 122 Ga. 365 (50 S. E. Rep. 132) the railroad company notified the consignee of the arrival of the merchandise. Before it was unloaded from the car, the consignee's drayman went with the freight clerk to the car and signed a receipt

for all the merchandise, as checked by the clerk. He then hauled some of the merchandise away that day but left some in the car. Held that all the merchandise had been completely delivered at the time of signing the receipt. In *Vaughan* v. *N. Y. N. H. & H. R. R. Co.*, 27 R. I. 235, two cars containing oats, bran and gluten, consigned to the plaintiff, arrived and were placed on a side track near the plaintiff's warehouse. He was duly notified of the arrival, and with the permission of the company's agent opened the cars, examined the contents and removed part of them, leaving the remainder in the cars where it was consumed by fire early the next morning. Held that all the consignment had been delivered. The court said: "But under the testimony we do not find that the defendant (the R. R. Co.) was even a warehouseman. The property had been delivered on the spur track to the plaintiff, he had accepted it, sold and removed some of it, and had assumed full dominion over it, and the mere fact that it still remained in the defendant's cars was a mere matter of convenience to the plaintiff, but did not impose any liability on the defendant."

The facts in the case at bar are manifestly different from those in the cases *State* v. *Intox. Liquors*, 102 Maine, 385, and 104 Maine, 463, and our decision here is not in conflict with those cases rightly read.

Of course the final determination of this question is with the Supreme Court of the United States, but not finding any decision of that court to the contrary upon facts like those in this case, we think for the reasons above given we should hold that the transit was ended, that the liquors had come into the possession of the consignee at the time of the seizure and were then subject to seizure and forfeiture under the State law. We have therefore no occasion to consider questions raised under the "Pure Food Act" of Congress. Having reached the consignee and being intended for unlawful sale, they must be declared forfeited.

> *Judgment of forfeiture against the liquors.*
> *Judgment against the claimant for costs of libellant.*
> *Liquors to be destroyed.*