## B. PRIESTLEY & CO., Inc., v. CUNARD S. S. CO., Limited.

Circuit Court of Appeals, Second Circuit. November 12, 1928.

No. 16.

L. Hand, Circuit Judge, dissenting.

Lord, Day & Lord, of New York City (James S. Hemingway and Jesse Hoyt, both of New York City, of counsel), for appellant.

Theodore L. Bailey, of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. Appellee, as consignee of a cargo of silk shipped from Liverpool to New York on the steamship Franconia, sent its truck driver to obtain delivery at appellant's piers along Eleventh avenue, New York City. There the goods were delivered at a chute at the second doorway facing on the avenue. The driver backed his truck to the platform and stayed with it while the cargo was being loaded by a man employed by the driver. Neither had any connection with the appellant. There was present a dock watchman, employed by the appellant to watch the delivery of the cargo. After the cargo had been physically placed upon the truck, the driver let the truck stand on the avenue and went to the pier office to sign the delivery book. He had no helper or assistant with him to stay with the truck during his absence. He knew of the practice requiring his signature at the delivery clerk's office. The helper who had been employed by the truck driver pulled the truck away from the platform, so as to make room for another truck. After signing the delivery book and securing, at the clerk's office, a pass which he was to surrender to a man at the gate as he passed out, the driver returned to the platform and was unable to find his truck. It was found the next morning at the police station. The cargo had been stolen. Liability was imposed below, upon the theory that the delivery of the cargo was not completed until the delivery book was signed and the permit for passage at the gate was given to the gateman.

■ When delivery of the cargo was made, it was necessary to surrender documents of title. This the truck driver did as the representative of the consignee, and thereupon the delivery clerk of the appellant authorized the driver to take the cargo. All that the appellant's watchman did was to supervise, as watchman, the loading operation. This was done to make certain that the driver took only the cargo to which he was entitled. But, when the cargo was physically upon his truck, the consignee then had possession and dominion over it, and the delivery was complete. The fact that the driver

was required to sign a delivery book did not make delivery incomplete until signed. Anthony & Jones Co. v. N. Y. C. & H. R. R. Co., 223 N. Y. 21, 119 N. E. 90, L. R. A. 1918F, 1085; Ford v. American Express Co., 203 Ill. App. 275; Arthur v. St. Paul & Duluth Ry. Co., 38 Minn. 95, 35 N. W. 718. Indeed, transfer of possession is not always necessary in order to constitute delivery. State v. Intoxicating Liquors, 106 Me. 138, 76 A. 265, 29 L. R. A. (N. S.) 745, 20 Ann. Cas. 668; Reed v. Richardson, 98 Mass. 216, 93 Am. Dec. 155. The receipt book, which the appellant requested be signed, acknowledged the receipt of the goods as "received in good order," which shows the condition of the goods when received by the consignee, and it would be of no effect if the consignee had not already received the goods when the receipt was signed. It was an acknowledgment of an event which had taken place. The custom of requiring receipt to be noted in a delivery book, and to give a pass to be used by the truck driver as a memorandum of passing out of the gate, was but a protection to the appellant against theft. It was an act subsequent to the delivery. McLeod Lumber Co. v. Crowley (D. C.) 8 F.(2d) 283.

Having possession, control, and dominion over the goods, it was incumbent upon the driver to use watchful care against theft. It no longer was the burden of the appellant.

Decree reversed.

L. HAND, Circuit Judge (dissenting). It may be that the plaintiff got possession of the silk as soon as it was loaded on the truck; at least, I am ready to assume so; but a man may have possession of what he is not free to take away. The truck certainly could not have left the pier until its drayman had procured and surrendered the permit, for the defendant's watchman was set to prevent his leaving until he had. This was to make sure that he was authorized to act for the true consignee; if he turned out not to be, the goods would have been unloaded forcibly, if need were. The delivery was not yet complete, because the carrier had not surrendered control over the goods, and that I understand to be necessary to a delivery. This was the holding in Wichita Falls, etc., Ry. Co. v. Brown, 76 Okl. 84, 183 P. 889, and Southern Grocery Co. v. Bush, 131 Ark. 153, 198 S. W. 136. These were cases where the goods had been delivered to a compress company, which was in substance a warehouse, where the consignees wished them to lie. However, the compress company would not deliver them without a document issued by the carrier. It is true that the opposite result was reached in Arthur v. St. Paul & Duluth Ry., 38 Minn. 95, 35 N. W. 718, on the notion that the carrier had merely reserved a lien for its freight, and on those facts, perhaps, the Minnesota case was right. The case at bar is not the same, because the carrier had not put the goods where they were to remain, merely reserving its lien. Placing them on the truck was not, as I have said, an unconditional surrender of possession; it was a step in the delivery, which the carrier might still retrace, and would, if need arose. The whole delivery had not, therefore, ended, and the decree below was right in my opinion.