## KENNY COMPANY *v.* ATLANTA AND WEST POINT RAILROAD COMPANY.

1. Where a railroad company has transported a car-load of goods and notified the consignee of their arrival, the delivery is complete when the agent of the consignee verifies the goods in the car and gives his receipt for the same.
2. Where the agent of the consignee removes most of the goods, but leaves some in the car on account of approaching night, and the car is broken open after having been closed and sealed by the agent of the railroad company, and some of the goods stolen therefrom, the railroad company, if liable at all, is liable only for gross neglect, as a gratuitous bailee.

Argued February 2, — Decided March 7, 1905.

Certiorari.   Before Judge Lumpkin.   Fulton superior court. May 11, 1904.

*Dodd, Newman & Dodd*, for plaintiff.
*Arthur Heyman*, for defendant.

SIMMONS, C. J.  The Kenny Company brought suit in a justice's court against the Atlanta and West Point Railroad Company for the value of seven bags of sugar.  Upon the trial before the magistrate the parties agreed upon the following statement of facts.  " On May 21st, 1903, the Atlanta & West Point Railroad Co. received at Atlanta, Ga., over its lines, car S. A. L. 17271, loaded with sugar consigned to C. D. Kenny Company, Atlanta, Ga., freight prepaid.  A notice of the arrival of this car was sent by the defendant to plaintiff on May 23rd, 1903, a copy of which notice is hereto attached, which notice was duly received by the plaintiff on the 23rd of May, 1903.  May 24th, 1903, was Sunday.  The defendant placed the above car on delivery track No. 7 in its yard, near its end, which is not far from Central avenue. On May 25th, 1903, plaintiff sent its drayman to defendant's depot for the purpose of having the contents of said car hauled to its store on Whitehall street.  The drayman went to defendant's office, secured the freight bill, and then went to Mr. V. B. White, delivery clerk of defendant, for the purpose of arranging to haul the sugar.  Mr. V. B. White, defendant's delivery clerk, went to the car with the drayman, and opened the car and checked the contents, the same checking 100 barrels and 50 bags of sugar, as billed.  The drayman then gave Mr. White, the delivery clerk, a receipt for the contents of said car, a copy of which receipt is hereto attached.  The defendant always requires a consignee to

give a receipt for the contents of a car before the consignee begins to unload a car. (It is the custom of the defendant to require a receipt for the billed contents of a car even in cases where it is impossible to check the contents of the car before the consignee is allowed to begin unloading the same.) Plaintiff's drayman thereupon began hauling the sugar from said car to the store of plaintiff, and continued to haul the sugar from the car through the day until about five o'clock p. m. of that day. At this time, Mr. V. B. White, defendant's delivery clerk, checked up the contents of the car, at which time he found 30 bags remaining in the car. Defendant's custom in connection with cars placed on defendant's delivery track is this: Every afternoon when the hauling from such cars is over, the defendant has a man in its employ who goes through its delivery yard and checks up the remaining contents in solid cars, and another employee of defendant closes the cars and seals the same. On the next morning defendant's watchman reported that he found the seals broken on said car a few minutes before seven o'clock. About seven thirty a. m., of the same morning, plaintiff's drayman went to defendant's yard to continue hauling, and found said seal broken. He thereupon went to Mr. V. B. White, defendant's delivery clerk, and told him that he had found the seal broken and that he found some of the sugar was missing. Defendant's delivery clerk went over to the car with plaintiff's drayman and counted 23 sacks in the car. The plaintiff had only received at its store the day before twenty sacks, and there should have been 30 sacks remaining in said car, according to the check made by defendant's delivery clerk when the car was first opened, and when it was sealed the same afternoon. This check showed that there were seven bags short. It is the custom for the consignees to unload solid cars. The railroad company places these cars on wagon tracks provided by the railroad, where the wagons and draymen of consignees can get to them for the purpose of unloading and hauling away their contents. It is the custom and rule of defendant company to allow unloading of cars only during warehouse hours, people hauling from cars being required to stop hauling at 5 p. m., the warehouse closing at that hour. All the sugar in this car was the property of the plaintiff, and the several missing bags, the subject-matter of this suit, were worth the sum of $35, the amount sued for."

Upon this statement of facts the magistrate held that the railroad company was not liable. The case was carried by certiorari to the superior court, where the judgment of the justice was affirmed; whereupon Kenny Company sued out a writ of error to this court, in which they allege as error the ruling of the judge of the superior court. The agreed statement of facts shows this ruling, however, to be correct. · The railroad company was bound to safely deliver this sugar to the consignee, and this it did. The agent of the consignee, after verifying the ·number of barrels and bags in the car, signed a receipt in full, which he delivered to the railroad company. This, in our opinion, constituted a complete delivery of the goods by the railroad to the consignee. The goods were in a car at a place where the consignee could get them, and while it is true that it did not remove all of the sugar on the same day, the record fails to disclose that the defendant company did anything to prevent its delivery. It is. also true that when· the agent of the railroad company ascertained from the agent of the consignee that he would not remove all the sugar by the time at which, under the rule of the company, the yard must be closed, the agent of the railroad company, according to established· custom, had the car closed and sealed. This amounted to no more than the promise of a gratuitous bailee to look after the goods for the consignee, and such a bailee is only liable for gross neglect. It was certainly not the duty of the railroad company, as argued by counsel for plaintiff in error, to employ a special watchman· to look after this car; when it placed the usual lock or seal upon the door of the car it did all that could have been required of it under the circumstances. Speaking for myself, I think the consignee took the·risk when it failed to remove the goods and left them to be cared for by the defendant. See, on this point, Whitney Mfg..Co. v. Railroad Co., 38 S. C. 365, 17 S. E. 147, where it was held: "In an action against a railroad company for the value of cotton which was burned in a car, it appeared that the cotton had been transported to the place of delivery in safety; that the car was placed on a sidetrack, at the request of plaintiff, and for its convenience; that·. the way-bill had been delivered to defendant; as a receipt;. and that plaintiff had removed a portion of the cotton. *Held*, that the evidence showed a delivery of the cotton." And again, "As

to the . . ground of appeal which alleges that as long as the cotton was in defendant's car it was in defendant's possession and defendant was liable for loss by fire, we are unable to see how a kindness or privilege can be construed into a right.     Take this illustration: a common carrier undertakes to deliver at a certain point in a city, and does then actually deliver; but after such delivery the owner asks the privilege of allowing his goods to remain in the vehicle, and injury afterwards happens.     There is no liability upon the common carrier, if he does not interfere to cause that injury."     See 6 Cyc. 464, and *Railroad Co.* v. *Thompson*, 86 *Ga.* 328.     *Judgment affirmed.     All the Justices concur.*