# FARMERS' MERCANTILE COMPANY v. NORTHERN PACIFIC RAILWAY COMPANY.

## (146 N. W. 550.)

**Gross negligence — want of any care — omission — recklessness — duty — fraud.**

1. Gross negligence is, to all intents and purposes, no care at all. It is the omission of the care which even the most inattentive and thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically wilful in its nature. It is an omission of duty which is akin to fraud. It is the absence of even slight care.

**Evidence — gross negligence — not shown.**

2. Evidence examined and *held* not to show gross negligence.

**Goods — freight paid — consignee — removal of part — railway company — warehouseman — storage charges — notice to relieve from liability.**

3. Where goods have been received and unloaded and the freight thereon paid by the consignee, but part only is actually and physically delivered on account of the fact that the consignee does not have drayage facilities sufficient to remove all, the liability of the railroad company as a warehouseman extends to such portion so left with it, unless at the time of such partial delivery it gives notice to the consignee that it will not insist upon storage charges and will no longer hold possession of the property as a warehouseman.

**Goods — depot — warehouse — stove — inflammable matter — care of stove — question of fact for jury.**

4. Where goods are placed in a depot or warehouse in a room in proximity to which is a stove which can only be regulated by opening the door, and within 3 and 6 feet of such stove is inflammable matter, it is a question of fact for the jury whether the leaving such door open in order to check the draft and prevent the fire from burning out constitutes lack of ordinary care.

**Conflagration — cause of — question for jury — evidence.**

5. It is also a question for the jury whether the leaving such door open in the proximity of the inflammable matter was the cause of the conflagration which, it is proved, destroyed the goods, there being no other probable cause disclosed by the evidence.

**Plaintiff — evidence — jury satisfied — injury.**

6. A plaintiff is not bound to exclude the possibility that an accident might

Note.—The authorities on the right of a carrier to terminate its responsibility as warehouseman are gathered in a note in 9 L.R.A. (N.S.) 577.

have happened in some other way than that contended for by him. He is only required to satisfy the jury by a fair preponderance of his evidence that his injury occurred in the manner he contends for.

**Facts — theory — different conclusions — question for jury.**

7. If there be shown any facts bearing upon the question of a loss or injury and they afford room for fair-minded men to conclude therefrom that one theory of the case is better supported than the other, the question cannot properly be withdrawn from the jury.

**Accident — cause shown — warrantable inference — other causes — absence of proof.**

8. A cause being shown which might produce an accident, and it further appearing that an accident of that particular character did occur, it is a warrantable inference, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result.

**Evidence — uncertainty — injury —different causes — speculation — verdict —specific cause charged — probability — nonsuit — error.**

9. Where in such a case the evidence is so uncertain as to leave it equally clear and probable that the injury resulted from any one of a number of causes that might be suggested, then and in that case a verdict for plaintiff would be pure speculation, and could not be sustained; but where the evidence, although circumstantial, is such that it would appear possible that the injury resulted from any one of several causes, and yet it points to the greater probability that it resulted from the specific cause charged by the plaintiff, a nonsuit should not be granted.

**Evidence — fair construction — negligence — conclusion.**

10. If upon a fair construction that a reasonable man might put upon the evidence, or any inference that might reasonably be drawn therefrom, the conclusion of negligence can be arrived at or justified, then the defendant is not entitled to a nonsuit, but the question of negligence should go to the jury.

Opinion filed March 12, 1914.

Appeal from the District Court of Morton County, *Nuchols,* J.

Action for damages for loss of freight by fire. Judgment for defendant. Plaintiff appeals.

Reversed.

Statement by BRUCE, J.

This is an action to recover the value of certain merchandise which was destroyed by fire in defendant's warehouse at Mandan on March 8,

1910. Various shipments of merchandise were consigned to defendant by various wholesale houses for delivery to the plaintiff at Mandan, North Dakota. Plaintiff's place of business, however, was situated about 18 or 20 miles from Mandan. The goods arrived at Mandan on the 24th day of February, 1910, and on the 1st and 2d days of March, 1910. On arriving at their destination they were placed in the defendant's warehouse. On the 24th day of February, 1910, plaintiff paid the freight for the goods received upon that day, and on the 3d day of March paid the freight upon the balance of the goods and which reached Mandon on the 1st day of March, 1910, and on the 2d day of March, 1910, respectively. At such time plaintiff was given a receipt for the freight so paid, but whether it itself gave a receipt for the goods is not in evidence. On the 3d day of March, 1910, plaintiff called for the goods with a drayman, but the drayman not having room for all of the freight, a portion thereof was left in defendant's warehouse at Mandan, and said goods were destroyed by fire on March 8, 1910. It was shown in the evidence that the plaintiff was in the habit of hiring its teaming done; that it sent up teams from its place of business at St. Anthony; and that it often happened "that the team could not haul all of the goods, and the balance was left in the freight depot until the team would come up again. This would be three or four days, according to the roads. Only once or twice did we have to pay storage, but as a general rule we did not have to pay storage, and we were not asked to pay storage on the goods in suit. At this time the roads were bad and the teams were slow in coming up." This evidence, as we construe it, shows that no storage was asked for the care of the goods from the time of their arrival, which was on the 24th day of February, 1910, and the 1st and 2d days of March, 1910, and at the time of a removal of a portion on the 3d day of March, 1910, and we may assume that no storage fee was demanded after the fire. The evidence, however, is a little inconclusive as to the terms on which the goods destroyed were left with the defendant after removal of part of the consignment. All of the evidence upon the subject, in addition to that already given, is to be found in the testimony of the secretary and treasurer of the plaintiff corporation, and is as follows: "When I paid the freight I took a receipt for it. Exhibit "A" is one of them. Where there was only one package, and it was delivered, there was a ring placed around the

figure in the column marked 'number of packages,' indicating that the package was delivered. Where there was no ring around it, it was not delivered. The barrel of linseed oil not checked off is the only item on that bill not received. The drayman put on his wagon the other items, and undoubtedly did not have room to take it. He came up and got other goods right along, but did not get around to take this barrel. There might have been other goods that we needed more. Occasionally we specified what he was to bring, but he usually had his own way. In general he had orders to take what came first." Exhibit "A" does not appear to have been offered in evidence. At any rate it is not in the record. It was stipulated that each of the bills of lading issued for the carriage of the goods contained the following provisions: "Property not moved by the party entitled to receive it, within forty-eight hours, exclusive of legal holidays, after notice of its arrival has been duly sent or given, may be kept in a car, depot, or place of delivery of the carrier or warehouse subject to reasonable charge for storage and to the carrier's responsibility as a warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner, and there held at the owner's risk, and without liability on the part of the carrier and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage. For loss, damage, or delay caused by fire occurring forty-eight hours, exclusive of legal holidays, after notice of the arrival of the property at destination or at port of export, if intended for export, has been duly sent or given, the carrier's liability shall be that of warehouseman only." There is no evidence as to whether the goods were checked over by the plaintiff or by his drayman. All that the witness testified to is that the freight was paid and a receipt for the money given. There is evidence, however, that certain goods were delivered to the drayman by the defendant, and that a ring was placed around the goods in the column marked "Number of packages" in the bill of lading. The case, therefore, as to the goods which were destroyed is not a case where goods have been physically delivered and afterwards returned for safekeeping, but where a consignment of goods has been received, a part delivery, and the remainder left without anything being said as to the terms and conditions of leaving.

The facts are practically undisputed which bear upon the commence-

27 N. D.—20.

ment and cause of the fire. In the southwest corner of the defendant's depot was a "warming room" where goods which might be injured by freezing were stored. There was a door from the outside into this room. This, however, was kept locked and there was only one window, which was shut. The only door, therefore, by which you could readily get into the "warming room" was in the northeast corner and open from the inside of the freight depot proper. There were two stoves in the room only one of which was used, and this one at this time of the year (March 8) was kept going only at night, as it was not very cold. The stove was of cast iron, belonging to the class known as the Earle Round Stoves, bulged in the middle and such as are usually used in small stations and cabooses. The feed door was in the upper part and the fire box in the lower half. It appears to have had no damper nor drafts, and was regulated by leaving the door open or shut as you wanted to check or stimulate the fire. There was a piece of zinc beneath this stove. The size of the room is not disclosed. It is shown, however, that there was a space of 5 or 6 feet between the stove and the nearest wall; that the room was pretty well filled with merchandise, which was piled in boxes, crates, and barrels around the wall and within 3 feet of the stove at the sides and within about 6 feet in front. One of the witnesses testifies that the bananas came in crates which were lined with burlap, and another that they came in boxes packed with hay. It appears that on the night in question there had been a fire in the stove since 7 o'clock in the evening, and that the door had been kept shut. At 2 o'clock in the morning two employees of the defendant came into the room, and one of them threw a hod of coal on the live coals still remaining in the stove. The two then left, leaving the stove door open, but closing the door between the warming room and the main part of the depot. The amount of coal thrown on the fire was about two shovels full. It was neither hard coal nor soft coal, and was in pretty large chunks. About an hour to an hour and a half after this occurrence, the two men smelled smoke, and, opening the door to the warming room, found dense smoke and flames of fire in and exuding therefrom. One of them went to turn in the fire alarm, and the other took a couple of pails of water from a barrel standing near by, and threw them at random into the room. A night policeman then joined them, and the three took out some hose from a neighboring cart hose, and connected it with the hy-

drant, but as there was no pressure they could not throw any water into the fire. Then the fire department came and coupled on to another hydrant, but did not have enough pressure, and by the time they did get sufficient pressure the fire was out of the warming room, and had burst through the eaves, and was beyond control. The hydrant to which the witnesses attached their hose belonged to the defendant, and the one to which the city fire department attached its hose belonged to the city of Mandan. The water pressure in both instances, however, was furnished by the defendant company.

*W. H. Stutsman,* for appellant.

A motion to direct a verdict must *specify* the ground upon which it is made. Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; Howie v. Bratrud, 14 S. D. 648, 86 N. W. 747; Mattoon v. Fremont, E. & M. V. R. Co. 6 S. D. 196, 60 N. W. 740.

Plaintiff is not bound to exclude the possibility that the accident might have happened in some way other than the way charged; such a holding would be to require him to make proof *beyond a reasonable doubt.* He is only required to satisfy the jury by a preponderance of the evidence. Lunde v. Cudahy Packing Co. 139 Iowa, 688, 117 N. W. 1063; Hopkinson v. Knapp, & S. Co. 92 Iowa, 328, 60 N. W. 653, 14 Am. Neg. Cas. 568; Dalton v. Chicago, R. I. & P. R. Co. 104 Iowa, 26, 73 N. W. 349; Huggard v. Glucose Sugar Ref. Co. 132 Iowa, 724, 109 N. W. 475.

Where, from the state of the evidence, there is room for honest, fair-minded men to differ as to the cause of the accident or injury, it is *always* a question for the jury. Schoepper v. Hancock Chemical Co. 113 Mich. 582, 71 N. W. 1081; Jucker v. Chicago & N. W. R. Co. 52 Wis. 150, 8 N. W. 862; Brownfield v. Chicago, R. I. & P. R. Co. 107 Iowa, 254, 77 N. W. 1038, 5 Am. Neg. Rep. 331; Seattle v. St. Louis & S. F. R. Co. 127 Mo. 336, 30 S. W. 125.

The question is not what the trial court, or this court, might infer from a given state of facts, but whether the jury, as reasonable, fair men might legitimately conclude from the proof offered, that the accident occurred in the manner alleged by plaintiff. Mumma v. Easton & A. R. Co. 73 N. J. L. 653, 65 Atl. 210; White v. Chicago, M. & St. P. R. Co. 1 S. D. 326, 9 L.R.A. 824, 47 N. W. 146; Kenney v. Hannibal

& St. J. R. Co. 80 Mo. 573; Sheldon v. Hudson River R. Co. 14 N. Y. 218, 67 Am. Dec. 155; Rintoul v. New York C. & H. R. R. Co. 17 Fed. 905; Bevis v. Baltimore & O. R. Co. 26 Mo. App. 19; Deming v. Merchants' Cotton-press & Storage Co. 90 Tenn. 307, 13 L.R.A. 518, 17 S. W. 89; Houston v. Brush, 66 Vt. 331, 29 Atl. 380.

The accident would not have happened if someone had not been careless. It is one that would not *ordinarily* happen without the negligence of some one. Kaples v. Orth, 61 Wis. 531, 21 N. W. 633; St. Paul F. & M. Ins. Co. v. Great Northern R. Co. 116 Minn. 397, 133 N. W. 849; Cummings v. National Furnace Co. 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; Carroll v. Chicago, B. & N. R. Co. 99 Wis. 399, 75 N. W. 176; Shafer v. Lacock, 168 Pa. 497, 29 L.R.A. 254, 32 Atl. 44; Paulsen v. Modern Woodmen, 21 N. D. 235, 130 N. W. 231; Stevens v. Continental Casualty Co. 12 N. D. 463, 97 N. W. 862; Anthony v. Mercantile Mut. Acci. Asso. 162 Mass. 354, 26 L.R.A. 406, 44 Am. St. Rep. 367, 38 N. E. 973.

On a motion by defendant for a directed verdict, at the close of plaintiff's case, the court will assume the evidence of the plaintiff to be undisputed, and give to it the most favorable construction it will bear. Bohl v. Dell Rapids, 15 S. D. 619, 91 N. W. 315; Richardson v. Swift & Co. 37 C. C. A. 557, 96 Fed. 699; Kansas P. R. Co. v. Richardson, 25 Kan. 391; Lowe v. Salt Lake City, 13 Utah, 91, 57 Am. St. Rep. 708, 44 Pac. 1050.

If negligence can be established from any lawful deduction from the evidence, it is error for the court to grant a nonsuit. Vanderwald v. Olsen, 1 N. Y. S. R. 506; Ham v. Lake Shore & M. S. R. Co. 13–23 Ohio C. C. 496; Stephens v. Brooks, 65 Ky. 137.

*Watson & Young* and *E. T. Conmy,* for respondent.

Where the ground for motion for a directed verdict makes manifest the question of law upon which the case is taken from the jury, and the defects upon which the motion is based do not admit of correction, or could not have been cured had attention been specifically called to them, a failure to so specify will not reverse the ruling. Daley v. Russ, 86 Cal. 114, 24 Pac. 867; Fontana v. Pacific Can. Co. 129 Cal. 51, 61 Pac. 580; Smalley v. Rio Grande Western R. Co. 34 Utah, 423, 98 Pac. 311; Chasse v. Bankers' Reserve Fund L. Ins. Co. 27 S. D. 70, 129 N. W. 571.

It is sufficient if the question is raised in general terms, where the motion is based upon the insufficiency of the evidence to sustain a recovery. 38 Cyc. 1584; Minnesota Thresher Mfg. Co. v. Lincoln, 4 N. D. 410, 61 N. W. 145.

The defendant was only a gratuitous bailee—and needed not to employ a watchman to guard the warehouse. Texas C. R. Co. v. Flanary, — Tex. Civ. App. —, 50 S. W. 726.

Where a railroad company is acting in good faith, as a mere depositary without pay, it is only required to use slight care, and will be liable for an act of ordinary negligence on the part of its servants. Brown v. Grand Trunk R. Co. 54 N. H. 535; McCombs v. North Carolina R. Co. 67 N. C. 193; Kenney Co. v. Atlanta & W. P. R. Co. 122 Ga. 365, 50 S. E. 132.

The consignee took the risk when it failed to remove the goods and left them to be cared for by the defendant. Whitney Mfg. Co. v. Richmond & D. R. Co. 38 S. C. 365, 37 Am. St. Rep. 767, 17 S. E. 147.

There is no liability on the common carrier if he does not interfere to cause the injury. 6 Cyc. 464; Georgia R. & Bkg. Co. v. Thompson, 86 Ga. 328, 12 S. E. 640; Neal v. Wilmington & W. R. Co. 53 N. C. (8 Jones, L.) 482; Vaughn v. New York, N. H. & H. R. R. Co. 27 R. I. 235, 61 Atl. 695; Gregg v. Illinois C. R. Co. 147 Ill. 550, 37 Am. St. Rep. 238, 35 N. E. 343; South & North Ala. R. Co. v. Wood, 66 Ala. 167, 41 Am. Rep. 749; Whitney Mfg. Co. v. Richmond & D. R. Co. 38 S. C. 365, 37 Am. St. Rep. 767, 17 S. E. 147.

If a bailee for hire, was defendant guilty of negligence proximately causing the loss of the goods in question? A railroad company is only bound to use the same diligence to save freight stored in its warehouse, at its destination, from fire, as it uses to save its own property, where the shipper has been notified that it is held subject to his order and at his risk. Laporte v. Wells, F. & Co.'s Express, 23 App. Div. 267, 48 N. Y. Supp. 295; E. O. Stanard Mill. Co. v. White Line C. Transit Co. 122 Mo. 258, 26 S. W. 705; Bennitt v. The Guiding Star, 53 Fed. 937; Schmidt v. Blood, 9 Wend. 268, 24 Am. Dec. 143; Grieve v. New York C. & H. R. R. Co. 25 App. Div. 518, 49 N. Y. Supp. 950.

Where the plaintiff alleges that his loss is occasioned by the negligence of defendant, he must *prove* it. Sheldon v. Hudson River R.

Co. 29 Barb. 228; Longabaugh v. Virginia City & T. R. Co. 9 Nev. 296; Smith v. Hannibal & St. J. R. Co. 37 Mo. 295; Omaha & R. Valley R. Co. v. Clark, 35 Neb. 867, 23 L.R.A. 509, 53 N. W. 970; Kilpatrick v. Richardson, 37 Neb. 731, 56 N. W. 481; White v. Chicago, M. & St. P. R. Co. 1 S. D. 330, 9 L.R.A. 824, 47 N. W. 146; Balding v. Andrews, 12 N. D. 277, 96 N. W. 305, 14 Am. Neg. Rep. 615; Claflin v. Meyer, 75 N. Y. 260, 31 Am. Rep. 467; Schmidt v. Blood, 24 Am. Dec. 153, note.

BRUCE, J. (after stating the facts as above). We are satisfied that if the defendant occupied the position of a gratuitous bailee merely, it was in no way liable in this case. If it was such a bailee, it could only have been held liable upon proof of gross negligence, and no such proof is to be found in the record. Gross negligence is, to all intents and purposes, no care at all. It is the omission of the care which even the most inattentive and thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically wilful in its nature. It is an omission of duty which is akin to fraud. It is the absence of even slight care. We find no proof of any such gross negligence in the case at bar.

The defendant, however, was not, as we view the evidence, a gratuitous bailee. It was a warehouseman; that is to say, a bailee for hire. As such it owed a duty of the exercise of reasonable or ordinary care. It is true that the journey was over, the freight paid, and that a part of the goods were delivered. The defendant, however, still retained the remainder, and had the right to charge storage therefor, both under the terms of the bill of lading, the statute, and the common law. This really is the test of the relationship; for it would never do to allow a bailee to act under a one-sided option, and to claim and to insist upon the relationship of a gratuitous bailee if the goods were lost or destroyed while in his custody, but to claim that of a bailee for hire if, when a delivery was demanded, he was able to produce the goods. Gray v. Missouri River Packet Co. 64 Mo. 47; McClain, Cases on Carriers, 21; Brunson v. Atlantic Coast Line R. Co. 76 S. C. 9, 9 L.R.A.(N.S.) 577, 56 S. E. 538. For a long time a decision upon the question directly at issue was avoided by the courts, though they seemed to lean towards the conclusions now reached by us. See Texas C. R.

Co. v. Flanary, — Tex. Civ. App. —, 50 S. W. 727. In the year 1900, however, the supreme court of Wisconsin indignantly dismissed the idea that the relationship of a gratuitous bailee merely existed, and as one that was hardly worthy of consideration. See Whitney v. Chicago & N. W. R. Co. 27 Wis. 327. In 1907 the rule was clearly laid down by the supreme court of South Carolina in a case almost identical in its facts to the one at bar. The court said: "The main question in the case is whether the undisputed testimony showed a delivery to the plaintiffs. As the fire occurred while the flour was in defendant's depot, and therefore in its actual possession, it sustained to the plaintiffs either the relation of common carrier, warehouseman, or gratuitous bailee. When goods transported by a railroad company arrived at their destination, its liability as a common carrier continues until the consignee has a reasonable time within which to remove them. But, even after the lapse of a reasonable time after its liability as a common carrier has ceased to exist, it is nevertheless liable by operation of law, as a warehouseman, although the goods may not have been unloaded and deposited in a warehouse used for storing freight, technically termed a warehouse. Spears v. Spartansburg, U. & C. R. Co. 11 S. C. 158; Bristow v. Atlantic Coast Line R. Co. 72 S. C. 43, 51 S. E. 529. Until a reasonable time has elapsed after arrival, the common carrier is practically liable as an insurer; but after that time it is only bound as a warehouseman to exercise ordinary care. As a warehouseman the railroad company has the right to exact storage charges as long as such relation exists in the particular case, and, until it ceases to be a warehouseman, its liability for ordinary negligence continues. *The fact that it has the right as a warehouseman to collect storage charges makes it a bailee for hire, and prevents it from claiming that it was merely a gratuitous bailee, at least before it gives notice that it will not insist upon such charges, and will not longer hold possession of the property as a warehouseman,* which the testimony does not show was done in this case. Therefore the defendant was not a gratuitous bailee, and must necessarily sustain to the plaintiffs either the relation of common carrier or warehouseman." Brunson v. Atlantic Coast Line R. Co. 76 S. C. 9, 9 L.R.A.(N.S.) 577, 56 S. E. 538.

Again in the case of Tarbell v. Royal Exch. Shipping Co. 110 N.

Y. 182, 6 Am. St. Rep. 350, 17 N. E. 721, we find the following: "Although a consignee may neglect to accept or receive the goods, the carrier is not thereby justified in abandoning them, or in negligently exposing them to injury. The law enables him to wholly exempt himself from responsibility in such a contingency by giving him the right to warehouse the goods. When this is done, he is no longer liable in any respect, and if they are subsequently lost by the negligence of the warehouseman, the carrier is not liable. Redmond v. Liverpool, N. Y. & P. S. B. Co. 46 N. Y. 578, 7 Am. Rep. 390, and cases cited. But so long as he has the custody of the goods, although there has been a constructive delivery which exempts him from liability as carrier, there supervenes upon the original contract of carriage by implication of law a duty as bailee or warehouseman to take ordinary care of the property."

In this case 63 slabs of tin were received at the port of New York. Notice was given to the consignees, who obtained a permit at the custom house for its discharge. Two days later they paid the freight, and obtained an order for the delivery of the tin, addressed to the clerk of the steamer on which it had been shipped. They left the order on the same day with the clerk, indorsed, "Deliver to our order only." On the same day the tin was discharged from the vessel. On the next day a weigher, sent by the assignees to defendant's wharf, weighed the tin and divided it into 5-ton lots. Three days later it was found that sixty-three slabs were missing; but there was nothing to show when or by whom they had been taken. The court found that the part of the wharf where the tin lay was the private wharf of the defendant. It was covered with a substantial building the doors of which were locked at night. Two watchmen were employed by the defendant to watch the wharf by day and four by night, and due care had been taken in their selection. There was also a competent person in the employ of the defendant to keep tally of the cargo taken away by merchants, and to take receipts for it. The trial court found for the plaintiff, and upon appeal the judgment was affirmed. The court, in passing upon the question, held that "under the circumstances, the defendant, under the authorities, must be held to have made delivery of the tin under its contract as carrier, and to have discharged itself from its custody as such." It, however, proceeded as follows: "There can

be no doubt, we suppose, that in many cases a carrier's whole duty in respect to goods carried by him is not discharged by a constructive delivery terminating his strict responsibility as carrier. Although a consignee may neglect to accept or receive the goods, the carrier is not thereby justified in abandoning them, or in negligently exposing them to injury. The law enables him to wholly exempt himself from responsibility in such a contingency by giving him the right to warehouse his goods. When this is done, he is no longer liable in any respect, and if they are subsequently lost by the negligence of the warehouseman, the carrier is not liable. Redmond v. Liverpool, N. Y. & P. S. B. Co. supra, and cases cited. But so long as he has the custody of the goods, although there has been a constructive delivery which exempts him from liability as carrier, there supervenes upon the original contract of carriage by implication of law a duty as bailee or warehouseman to take ordinary care of the property. This duty of ordinary care rested upon the defendant in this case. The tin, it is true, was placed by the act of the defendant under the dominion of the consignee for the purposes of weighing and removal; but nevertheless, as between the defendant and their assignees, the actual custody of the part not removed by the consignees or their assignees remained at all times in the defendant. It was deposited on its private wharf, to which alone it, its servants, and those permitted by it, had access. The tin could not have been removed against their consent. It was, in fact, removed by someone unknown, by their tacit acquiescence, doubtless without any fraud on their part, but nevertheless its removal by a stranger was made possible by reason of an omission on the part of the defendant's servants to take the precautions against misdelivery which the defendant had deemed it proper to prescribe to prevent such an occurrence. The trial court found that the omission to take these precautions was negligence. We do not perceive why this finding is not supported by evidence. If there was negligence on the part of the servants of the defendants which occasioned or contributed to the loss, the doctrine of *respondeat superior* applies, and makes it in law the negligence of the defendant. The delay of the consignees in removing the tin had no legal connection with this breach of duty by the defendant, and cannot justly be considered as a concurring cause of the loss."

We find no cases which hold to a contrary doctrine, with perhaps the exception of Brown v. Grand Trunk R. Co. 54 N. H. 535. We have carefully examined the authorities presented by counsel for respondent, but find that although in them the carrier was exempted from liability, the evidence disclosed that a delivery had in fact been made, and that the carrier had no longer any custody or control over the goods or any duty to perform. Most of them are what might be called carload cases in which the freight had been paid, the goods or cars receipted for, and the cars switched upon side tracks or spurs of the consignees. Delivery in fact had been made, though the goods remained in the cars of the railroad company, the custody was in the consignees; the cars, as it were, being bailed to the consignees, rather than the wheat or cotton contained therein being bailed to the carrier. Such cases are: Vaughn v. New York, N. H. & H. R. R. Co. 27 R. I. 235, 61 Atl. 695; Whitney Mfg. Co. v. Richmond, 38 S. C. 365, 37 Am. St. Rep. 767, 17 S. E. 147; Kenney Co. v. Atlanta & W. P. R. Co. 122 Ga. 365, 50 S. E. 132; Texas C. R. Co. v. Flanary, — Tex. Civ. App. —, 50 S. W. 727.

The cases of Neal v. Wilmington & W. R. Co. 53 N. C. (8 Jones, L.) 482, is a case in which the liability of a warehouseman or bailee for hire is alone fixed or considered, and in which the point under consideration in the case at bar is not mentioned. The same is true of the case of Gregg v. Illinois C. R. Co. 147 Ill. 550, 37 Am. St. Rep. 238, 35 N. E. 343.

In the case of New Albany & S. R. Co. v. Campbell, 12 Ind. 55, the goods were placed upon the platform for delivery, and no arrangements were made for their future custody, and they were there burned. There was no evidence whatever from which any negligence contributing to the fire, or occasioning the fire, could be imputed to the railway company.

In the case of Chalk v. Charlotte, C. & A. R. Co. 85 N. C. 423, the goods were placed upon the platform for delivery, the freight charges were paid, and no intimation seems to have been given that there was a desire that they should be retained. The consignee delayed on account of an inability to secure the services of a city drayman. The fire, too, seems to have been occasioned by a third party, for whose negligence the court held the company was not liable.

In the case at bar there is no proof of any delivery to the consignees of the articles which were destroyed. The testimony is, in fact, that when the plaintiff's secretary and treasurer "paid the freight, he took a receipt for it. Where there was only one package and it was delivered, there was a ring placed around the figure in the column marked 'Number of Packages,' indicating that the package was delivered. *Where there was no ring around it, it was not delivered.* The barrel of linseed oil not checked off is the only item on that bill not received. The drayman put on his wagon all the other items, and undoubtedly did not have room to take it. He came up and got other goods right along, but did not get around to take this barrel. There might have been other goods that we needed more. Occasionally we specified what he was to bring, but he usually had his own way. In general he had orders to take what came first." To hold, indeed, in this case that the defendant was a gratuitous bailee merely, would be to hold that in all such cases no storage can be charged, and that consignees can impose upon the accommodations and good nature of the carrier indefinitely. Such a holding might be advantageous to the defendant in this particular lawsuit. We hardly believe, however, that it would advantage it permanently and as a general rule of business, or that the real interests of either carriers or shippers would be subserved thereby.

In the case at bar, also, there is no proof of any notice being given that no charges would be insisted upon. There is, on the other hand, proof that storage charges had occasionally been demanded in the past under similar circumstances. It certainly would have been within the power and the right of the defendant company to have demanded them if the goods had not been destroyed and had been called for some days later. The law will not allow a bailee or warehouseman in such a case to keep his intentions locked in his own breast. It is true that the evidence shows that no charges were demanded, but all we can infer from this is that no storage fees were demanded up to the time of the partial delivery, and none after the fire. There is no evidence of anything being said as to the charges on the goods retained, when they were retained, or any waiver of the right to charge therefor. Under the authorities the defendant was a bailee for hire.

We, too, concede that a bailor "seeking to recover from a warehouseman for the nondelivery of goods or an injury thereto must prove

negligence. When he shows that the goods were not delivered on demand or were delivered in damaged condition, he has made a prima facie case. If the defendant accounts for the nondelivery or injury by showing that the goods were stolen or were lost or damaged by fire, or in any other manner not inconsistent with the exercise of ordinary care on his part, the plaintiff's prima facie case is overcome, and he must prove positive negligence occasioning the loss." See Schmidt v. Blood, Wend. 268, 24 Am. Dec. 153. In the case at bar, however, as before suggested, the proof shows not only the loss by fire, but the fact of an open stove in the proximity of inflammable matter, and as to whether or not this was negligence, and the cause of the conflagration, are, we believe, questions for the jury to decide.

The case of Bennitt v. The Guiding Star, 53 Fed. 937, cited by counsel for respondent, is not in point. In this case there was no proof whatever as to how the fire originated, or any explanation therefor.

The defendant then was a bailee for hire, and owed the duty of ordinary care. Whether this was exercised or not was, under the evidence, a question for the jury, and not for the court, to decide. The leaving of the door of the stove open, and its proximity to inflammable matter, were not merely possible, but highly probable, causes of the accident. Whether they were the causes or not was for a jury to decide. A plaintiff "is not bound to exclude the possibility that the accident might have happened in some other way, for that would be to require him to make his case beyond a reasonable doubt. He is only required to satisfy the jury by a fair preponderance of the evidence that the injury occurred in the manner he contends it did." Lunde v. Cudahy Packing Co. 139 Iowa, 688, 117 N. W. 1063; Hopkinson v. Knapp & S. Co. 92 Iowa, 328, 60 N. W. 653, 14 Am. Neg. Cas. 568; Dalton v. Chicago, R. I. & P. R. Co. 104 Iowa, 26, 73 N. W. 349; Huggard v. Glucose Sugar Ref. Co. 132 Iowa, 724, 109 N. W. 475. "If there be shown any facts bearing upon the question, and they afford room for fair-minded men to conclude therefrom that one theory of the case is better supported than the other, the question cannot properly be withdrawn from the jury. . . . A cause being shown which might produce an accident, and it further appearing that an accident of that particular character did occur, it is a warrantable inference, in the absence of showing of other cause, that the one known

was the operative agency in bringing about such result." Mumma v. Easton & A. R. Co. 73 N. J. L. 653, 65 Atl. 210; Schoepper v. Hancock Chemical Co. 113 Mich. 582, 71 N. W. 1081; Jucker v. Chicago & N. W. R. Co. 52 Wis. 150, 8 N. W. 862; Brownfield v. Chicago, R. I. & P. R. Co. 107 Iowa, 254, 77 N. W. 1038, 5 Am. Neg. Rep. 331; Seattle v. St. Louis & S. F. R. Co. 127 Mo. 336, 30 S. W. 125; Kenney v. Hannibal & St. J. R. Co. 80 Mo. 573; Sheldon v. Hudson River R. Co. 14 N. Y. 218, 67 Am. Dec. 155.

The rule of probabilities has, perhaps, been as clearly stated by the supreme court of Idaho in the case of Adams v. Bunker Hill & S. Min. Co. 12 Idaho, 637, 11 L.R.A.(N.S.) 844, 89 Pac. 624, as in any other case. "Where the evidence in a personal injury case," the court says, "is so uncertain as to leave it equally clear and probable that the injury resulted from any one of a number of cases that might be suggested, then and in that case a verdict for plaintiff would be pure speculation, and could not be sustained; but where the evidence, although circumstantial, is such that it would appear possible that the injury resulted from any one of several causes, and yet it points to the greater probability that it resulted from the specific cause charged by the plaintiff, a nonsuit should not be granted. In the latter case the jury would be justified in returning a verdict in favor of the plaintiff, although it be possible that the injury may have resulted from some other cause. The law does not anticipate or attempt to exclude mere possibilities. If upon any fair construction that a reasonable man might put upon the evidence, or any inference that might reasonably be drawn therefrom, the conclusion of negligence can be arrived at or justified, then the defendant is not entitled to a nonsuit, but the question of negligence should go to the jury." See also Rober v. Northern P. R. Co. 25 N. D. 394, 142 N. W. 22. In the case at bar not merely was the leaving of the stove door open and the proximity of that stove to the freight a possible and probable cause of the conflagration, but it is the only one that is hinted at in the evidence.

The same considerations apply to the question whether the leaving of the stove door open and in the proximity of the more or less inflammable freight constituted a lack of ordinary care. Questions of negligence are primarily for the jury. The general rule is that if there is evidence tending fairly to show actual negligence on the part

of the defendant or even scant or slight evidence, if it is admitted without objection, the case should be submitted to the jury if it might be reasonably and properly concluded that there was negligence. A case should not be withdrawn from the jury when a recovery can be had on a view that can reasonably be taken of the facts which the evidence tends to show, and the fact that the defendant offers strong evidence showing that the plaintiff must be mistaken in his version of the accident will not justify the court in taking the case from the jury. The question of negligence, indeed, whether it be of a defendant or the alleged contributory negligence of a plaintiff, is primarily and generally a question of fact for the jury. It becomes one of law, and is withdrawable from the jury only when but one conclusion can be drawn from the undisputed facts. If the undisputed facts are of such a nature that reasonable men might draw different conclusions or deductions therefrom, then the question of negligence must be submitted to the jury. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Thomp. Neg. §§ 3790, 3791; Kunkle v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; Rober v. Northern P. R. Co. 25 N. D. 394, 142 N. W. 22.

We are satisfied that there is no proof of gross negligence in this case. Whether or not there was a lack of ordinary care, however, and whether that lack was the proximate cause of the conflagration, are, we believe, matters upon which reasonable men might differ. Such being the fact, the case should have been submitted to the jury.

The judgment of the District Court is reversed and the cause remanded for further proceedings according to law.