**Melodee J. MERTZ, by her guardian ad litem, Alice Mertz, Plaintiff and Respondent,**

v.

**Eleanor WEIBE, Defendant and Appellant.**

**Alice MERTZ, Plaintiff and Respondent,**

v.

**Eleanor WEIBE, Defendant and Appellant.**

**Civ. No. 8529.**

Supreme Court of North Dakota.

Sept. 24, 1970.

Rehearing Denied Nov. 10, 1970.

Traynor & Traynor, Devils Lake, for appellant.

Duffy & Haugland, Devils Lake, for respondent.

KNUDSON, Judge. (On reassignment.)

These appeals arise out of a collision of two automobiles which met and collided at the top of a small hill. Separate actions were brought by two passengers in one of the automobiles against the driver and owner of the other automobile for personal injuries sustained in the accident. Although separate actions were brought, they were consolidated for the purpose of trial. A jury was waived, and after trial to the court a judgment was entered awarding damages to each plaintiff. The defendant has appealed from the judgment and demands a trial de novo in this court.

The plaintiffs, Alice Mertz and Melodee J. Mertz, are the wife and ten-year-old daughter, respectively, of Marvin Mertz, who was driving the automobile in which they were passengers when it collided with the automobile being driven by the defendant, Miss Eleanor Weibe, as the two vehicles met at the top of a small hill on a township road a few miles north and west of Hurdsfield, North Dakota. The plaintiffs seek damages for injuries sustained by each in the collision, claiming that their respective injuries were caused by the negligence of the defendant Miss Weibe. The collision occurred at about 1:30 p.m. on December 29, 1965. It was a clear day and the road was dry. The road was 21 feet 10 inches wide and was covered with a thin coat of gravel. The Mertz automobile was proceeding in a northerly direction and the Weibe automobile was proceeding in a southerly direction. Both were being driven within the speed limit. Both parties claim the other was on the wrong side of the road and failed to keep a proper lookout.

The trial court, in a lengthy memorandum opinion, considered the evidence introduced at the trial and concluded that Miss Weibe, at the time of the collision, was driving her automobile partially on the Mertz half of the road and that her negligence in so doing was a proximate cause of the plaintiffs' injuries. It awarded damages in favor of the plaintiff Alice Mertz in the amount of $26,441.00 and in favor of the plaintiff Melodee J. Mertz in the amount of $6,722.40.

From the judgment entered in accordance with the trial court's findings and order for judgment the defendant appeals and demands a trial de novo in this court.

Under the provisions of § 28–27–32, North Dakota Century Code, on appeal from an action tried by the court without a jury, whether triable by a jury or not,

The supreme court shall try anew the question of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial, and shall either affirm or modify the judgment or direct a new judgment to be entered in the district court. * * *

N.D.C.C. § 28–27–32.

■ Under the provisions of this section, on appeal from an action tried by the court without a jury, whether triable to a jury or not, the supreme court will try anew the questions of fact if the appellant demands a trial anew of the entire case and will review and weigh the evidence independently of the trial court's findings, but in arriving at its decision will give to those findings appreciable weight, especially when they are based on the testimony of witnesses who appeared in person before the trial court. Umland v. Frendberg, 63 N.W.2d 295 (N.D.1954), citing Knell v. Christman, 79 N.D. 726, 59 N.W.2d 293 (1953), and cases cited therein. See also Hillius v. Wagner, 152 N.W.2d 468 (N.D. 1967), and cases cited therein.

It therefore becomes incumbent upon this court to "review the record here

presented and find facts for itself." Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808 (1942); Doyle v. Doyle, 52 N.D. 380, 202 N.W. 860 (1925).

The testimony of the two drivers is in direct conflict as to several important factors, particularly as to where, with reference to the center of the road, the respective automobiles were being driven immediately before the collision. We find, from an examination of the evidence, that we, as did the trial court, must rely principally on the physical evidence introduced at the trial to determine where the collision occurred.

■ In an action based on negligence, the plaintiff has the burden of proving that the defendant was responsible for some negligent act or omission, and that such act or omission was the proximate cause of the plaintiff's injury. Farmers Home Mut. Ins. Co. of Medelia, Minn. v. Grand Forks Implement Co., 79 N.D. 177, 55 N.W.2d 315 (1952); 38 Am.Jur., Negligence, § 285, p. 975; 65A C.J.S. Negligence §§ 208, 209, pp. 463, 478. The plaintiffs are only required to satisfy the trier of the facts by a fair preponderance of the evidence that the injuries occurred in the manner contended for in their respective claims. McKenzie v. Hanson, 143 N.W.2d 697 (N.D.1966); Farmers' Mercantile Co. v. Northern Pacific Ry. Co., 27 N.D. 302, 146 N.W. 550 (1914); 38 Am.Jur., Negligence, § 285, p. 974.

The only eyewitnesses who testified to the occurrence of the accident were Marvin Mertz, the driver of the automobile in which the plaintiffs were riding, and the defendant Miss Weibe, the driver of the other automobile.

According to the testimony of Mertz, he had driven from his farm home to his mailbox and from the mailbox a distance of about one-fourth of a mile on the township road to the point where the accident occurred. His wife and son were seated with him in the front seat, and his three daughters, including the plaintiff Melodee, were seated in the back seat. He had stopped at his rural mailbox about one-fourth of a mile south of the accident scene to take the mail from the mailbox, which was located on the west side of the road. He then drove at a speed of from thirty to thirty-five miles per hour in a northerly direction and, as he approached the crest of the hill upon which the accident occurred, he was driving on his half of the road. The road is flat and low to the beginning of the incline which ascends the hill where the accident occurred. The incline up the slope of the hill was not steep, but it was more steep than the incline approaching the hill from its other side. He did not see the Weibe automobile approaching until it was ten to twelve feet from him and he saw it was coming toward him in his lane of travel. He said the road had three well-traveled paths, the center one being used in common by vehicles going both north and south. There was a ridge of gravel from eight to ten inches high located about two feet from the east shoulder of the road, and Mertz said that he drove his vehicle with the right wheels about six to eight inches west of the gravel ridge, and that this would place the left wheels of his automobile "maybe between nine to ten feet" from the east edge of the road. He said that his automobile extended outward about three inches beyond the outer edge of its wheels. Thus he contends he was driving on his half of the road, because the road was 21 feet 10 inches wide. Mertz said that when the Weibe automobile came over the hill in his lane of travel he did not have time to turn out to avoid it, nor to brake his vehicle, and that a collision resulted.

According to the testimony of the defendant Miss Weibe, she was traveling in a southerly direction. She and her mother had left her mother's home in Hurdsfield earlier in the day and had driven to a farm where they purchased eggs. They were enroute back to Hurdsfield when the accident occurred. They had traveled over a series of knolls, or small hills, since the road traversed an area of rolling terrain.

She testified that about a mile from the accident scene, while at the top of one of the knolls, she saw a white automobile ahead which she assumed was coming in her direction; that because the terrain was rolling she decreased her speed and followed a course of travel along the right-hand side of the road. She testified that when she came to the crest of the hill where the accident occurred she saw the Mertz car approaching right in front of her, probably 100 to 120 feet away. She testified that her mother, who was riding with her, said, "They are going to hit us"; that she then attempted to turn toward the ditch and thinks she "pumped" her brakes once or twice, but testified that she did not know how far her car had traveled toward the west ditch when her car was hit by the Mertz car.

The other eyewitness to the accident, Miss Weibe's mother, did not testify.

The plaintiff, Alice Mertz, testified that she did not observe the accident because she was engaged in reading a personal letter taken from the mailbox a few moments earlier.

It further appears from the record that none of the witnesses was able to testify as to tracks or skid marks on the road made by either vehicle at the accident scene.

There were two witnesses, who arrived at the scene shortly after the accident, who testified that they found some debris upon the road after the accident, which they removed. This debris consisted principally of broken glass and some metal parts from both automobiles. Their testimony indicates that this debris was found approximately in the center of the road, and in Mertz' lane of traffic, and covered an area estimated variously at from two to four or more feet in diameter; that shortly after the accident this debris was removed to permit traffic to pass. No measurement of the size of the debris area or of its location upon the road was made by these witnesses, and they testified from recollection.

Pictures which were taken shortly after the accident of the accident scene and of both automobiles were introduced in evidence. These pictures show the relative positions of the automobiles as they came to rest after the accident, and also show splotches and a trail of fluid on the road. The sheriff of the county and a highway patrolman, both of whom examined the accident scene, testified that the trail of fluid was radiator coolant extending from a point commencing 8 feet 6 inches from the west shoulder of the road to a point directly under the radiator of the Mertz automobile where it came to rest after the accident on the east shoulder of the road. The measurements and location upon the road of the trail of coolant, and other findings by these officers, were platted on a map of the accident scene by the highway patrolman and received in evidence. The photographs taken of the accident scene by the sheriff, and received in evidence, also show this trail of coolant on the road. These officers also examined both automobiles and they found the radiators of both automobiles were damaged, but there was no trail of coolant leading from the accident scene to the Weibe automobile. The Weibe automobile came to rest after the collision in the west ditch, facing south. The Mertz automobile came to rest, also facing south, on the east shoulder of the road. Neither vehicle traveled very far after the collision. Each automobile received damages as a result of the impact to its left front, including the left headlight, the left front fender, and the left front portion of its left side. The damage to the left side of the Weibe automobile extended back past the front door, whereas the damage to the left side of the Mertz automobile extended back to the front door. It appears from the trial judge's memorandum decision that he relied principally upon the physical evidence, consisting of the debris and road markings, to determine the position of the automobiles on the road at the point of impact. The testimony of the two drivers on this question is in direct conflict, and their

testimony on this point was not relied upon by the trial judge in making his decision. We have reviewed this testimony, and from the cold record are unable to say which driver was telling the truth. They no doubt both testified to the facts as they saw them.

Upon examining the pictures of the two automobiles and observing the damage to the two automobiles, it appears that the Weibe Ford Falcon Futura was struck on the left front fender and thence the impact continued on the left front side extending alongside the left front fender to the rear of the left front door, as though the Weibe car was in the process of turning to the right; and that the Mertz Chevrolet was struck more directly on the left front of the left front fender with damage extending back to the left front door frame.

The highway patrolman testified there were splotches of coolant in the road at a point in the road 8 feet 6 inches from the west side of the road. He testified the road was 21 feet 6 inches in width. Accordingly, the coolant would then be 2 feet 3 inches west of an arbitrarily established center line at 10 feet 9 inches from each side of the road. He was of the opinion that the coolant came from the radiator of the Mertz automobile.

But does this place the Mertz automobile in the lane of traffic of the Weibe automobile as the place of the impact? We think not.

The force of the impact caused the Mertz car to swing to the left into the south-bound lane, spinning the Mertz automobile, as on a turntable, one-half turn, with the momentum propelling the Mertz automobile backward until it came to rest on the east shoulder, the automobile facing south. It is reasonable to conclude that the coolant did not begin to flow from the Mertz automobile until after it had swung into the south-bound lane of the Weibe automobile after the impact and, therefore, the splotch would show on that lane of the road, with the trail leading from there to

the Mertz automobile, where it came to rest. The Weibe automobile, after impact, caromed off to the right and came to rest in the west ditch, facing south.

■ The evidence indicates that Miss Weibe was in Mertz' lane of traffic. There was testimony of debris in Mertz' lane of traffic and the damaged parts of the automobiles indicate that had Miss Weibe been in her lane of traffic the damage to her car would have been more to the left. Taking into consideration all of this evidence, we, as the trier of facts on appeal de novo, find that Miss Weibe's automobile was in the lane of traffic of the Mertz automobile.

We agree with the trial court's findings that Miss Weibe, at the time of the accident, was driving her automobile partially on Mertz' half of the highway and that her negligence in driving her automobile in Mertz' lane of traffic was the proximate cause of the plaintiffs' injuries.

Miss Weibe also contends that Mertz was negligent, contending that he was driving his automobile over the center of the road into Miss Weibe's lane of traffic, and that such negligence is imputed to the plaintiffs, on the ground that Mertz and his wife, Alice, were engaged in a joint enterprise, and that his daughter, Melodee, was on the way to Harvey for dental attention, and therefore was engaged in family business. Miss Weibe contends that the plaintiffs Alice and Melodee are therefore barred from recovery by the negligence of Mertz being imputed to them.

■ Ordinarily, negligence on the part of the driver of a vehicle cannot be imputed to a passenger riding with him. Kelmis v. Cardinal Petroleum Co., 156 N.W.2d 710 (N.D.1968); Anderson v. Stokkeland, 125 N.W.2d 665 (N.D.1964).

Even though Mertz may have been negligent, his negligence may not be imputed to the passengers in his automobile, unless Mertz' negligence may be imputed to his wife and daughter, the plaintiffs in this ac-

tion, on the theory that they were engaged in a joint enterprise.

In support of this contention that the Mertzes were engaged in a joint enterprise, Miss Weibe cites the case of Howard v. Riley, 257 Wis. 594, 44 N.W.2d 552 (1950), wherein the husband and wife were held to be engaged in a joint enterprise in that they were on a trip, the primary and only purpose of the trip being the inspection of a dormer under construction by the husband and wife as joint owners of a motel property, and the husband's negligence in driving the automobile was imputed to his wife-passenger and barred recovery by her against a third tort-feasor.

In her argument, Miss Weibe contends that the Mertz automobile was engaged in family business—the wife, Alice, to get the mail, and the daughter, Melodee, to keep a dental appointment—and she seems to imply that the rule applicable to joint enterprise applied here.

■ In this state we have adopted the "Family Purpose Doctrine" whereby the owner of an automobile is liable for damages proximately caused by the negligent driving of a member of the family of a family automobile. Bryan v. Schatz, 77 N.D. 9, 39 N.W.2d 435 (1949); Carpenter v. Dunnell, 61 N.D. 263, 237 N.W. 779 (1931); Ulman v. Lindeman, 44 N.D. 36, 176 N.W. 25, 10 A.L.R. 1440 (1919).

In Michaelsohn v. Smith, 113 N.W.2d 571 (N.D.1962), we held that the family purpose doctrine had no application to a case:

> Family purpose doctrine has no application to a case where the owner of a family automobile seeks to recover for injuries proximately caused by the negligence of the operator of another automobile, even though the family member driver of the owner's automobile was also negligent.

Michaelsohn v. Smith, *supra*, Syllabus ¶ 2.

Courts have refused to apply the doctrine where an owner-passenger in an automobile has been injured due to the negligence of a third party and the concurrent or contributory negligence of a family member driver of the owner's automobile. Michaelsohn v. Smith, *supra*.

■ In the present case, the purpose of the trip of Mertz is more akin to the purposes coming under the family purpose doctrine, and under the rule therein established that the negligence of a family member driver cannot be imputed to the owner in an action by the owner against a third tort-feasor to recover for injuries, it seems logical, conversely, that the negligence of the owner driver cannot be imputed to family member passengers to bar recovery by them against third tort-feasors for injuries to them.

Giving appreciable weight to the trial court's findings, we affirm the trial court.

PAULSON and ERICKSTAD, JJ., concur.

STRUTZ, Judge (dissenting).

I dissent. An unbiased view of the evidence clearly shows that the plaintiffs have failed to establish, by a fair preponderance of the evidence, negligence of the defendant. Both drivers testified that they were traveling on their right side of the highway. If both were correct in their contentions, the vehicles should have passed each other without incident. No witnesses other than the drivers testified as to the position of the vehicles upon the highway at the time of impact, since the attention of other persons in the cars was directed elsewhere at that time. The trial judge, being unable to determine who was stating the facts correctly in this regard, did not rely upon the testimony of either driver, but based his findings upon the physical evidence, consisting chiefly of the debris and the markings on the road. This evidence, however, is unreliable because the debris

had been removed by persons first arriving at the scene of the accident, in order to permit traffic to pass. No measurements were made by these witnesses, and they testified only from what they could recall.

There is some physical evidence, however, which I believe is entirely reliable, and that is the unbroken trail of coolant from the damaged radiator of the plaintiff's car, which clearly establishes that the plaintiff's vehicle was traveling, at least partially, on its wrong side of the road at the time of impact. This is evidence which cannot be disputed. The record discloses that the plaintiff's car was traveling north, on the east side of the highway, yet the trail of coolant from plaintiff's radiator commences two feet, five inches west of the center of the road and angles northeast to the point where the car came to rest. The record does not disclose just what part of the plaintiff's radiator, from which the coolant escaped, was damaged, but, assuming that it was the left side since it was the left side of the car which was damaged, this evidence clearly establishes that the left side of plaintiff's car was well over the centerline at the time of impact. It is well known that the radiator of an automobile does not extend to the outer edge of a car, and therefore it is fair to assume that the left side of the plaintiff's vehicle

was more than two feet, five inches over the centerline. In fact, it must have been at least three feet or more over the centerline at the time of the accident.

When two vehicles traveling in opposite directions meet partially head-on, the width of the damaged area on each vehicle will be the same. Therefore, since we know the path of the plaintiff's automobile placed the left side of that car at least three feet over the centerline of the road, it is possible to determine from the width of the damage to each vehicle just where the defendant's vehicle was traveling. The pictures introduced in evidence disclose that the area of impact on the left side of each vehicle was not greater than a foot to 1½ feet. Since we knew that the plaintiff's car was traveling three feet over the centerline and that the area of damage on the vehicles clearly was less than two feet, the defendant's vehicle must have been at least one foot or more to the right of the centerline.

The burden of proof was upon the plaintiff to establish, by a fair preponderance of the evidence, that the defendant was negligent. I believe the plaintiff has wholly failed in this proof and that the judgment should be reversed.

TEIGEN, C. J., joins in this dissent.