[File No. 6421.]

MARGARET JACOBS, Appellant, v. CARL H. NELSON, and F. H. Delger.

CARL H. NELSON, Respondent.

(268 N. W. 873.)

28

Opinion filed July 29, 1936.   Rehearing denied September 24, 1936.

*Conmy & Conmy,* for appellant.
*Pierce, Tenneson, Cupler, & Stambaugh,* for respondent.

BURR, J.   The plaintiff was the guest of the defendant Nelson, riding in an automobile on the public highway.   Her complaint states the defendant operated his automobile in such a wanton and grossly negligent manner that she was injured in a collision between this automobile and a truck driven by F. H. Delger, and also charges Delger with negligence.

The jury returned a verdict against the defendant Nelson for $11,250, upon which judgment was entered, and for Delger for dismissal of the action.   Upon motion of the defendant Nelson for judgment notwithstanding the verdict or for a new trial, the judgment against him was set aside and a new trial ordered.   From the order granting the new trial the plaintiff has appealed.

There are but two main issues in the case—the sufficiency of the evidence to show gross negligence, and alleged error in the reception of testimony to the effect that Nelson carried liability insurance and that Delger had no insurance.

Where one suffers detriment from the unlawful act of another, he may recover from the person in fault compensation therefor in money, which is called damages, and for the breach of an obligation not arising from contract the measure of damages is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.   Sections 7139 and 7165 of the Compiled Laws.   This precludes accident and requires a showing of negligence on the part of the defendant.

Under the so-called "Guest Statute" of this State "Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of North Dakota, and while so riding as such

guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. . . ." Sess. Laws 1931, chap. 184, § 1. Section 2 of the act, however, provides: "Nothing in this Act contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication, wilful misconduct, or gross negligence of such owner, driver or person responsible for the operation of such vehicle; provided . . . the burden shall be upon the plaintiff to establish that such intoxication, wilful misconduct or gross negligence was the proximate cause of such death or injury or damage." Section 3 of the act defines "Guest" as "being a person who accepts a ride in any vehicle without giving compensation therefor."

In this case we are not concerned with the interpretation of the phrase "accepts a ride." It is admitted the plaintiff was a "guest" of the defendant Nelson.

The complaint in this case is sufficient to charge both "wilful misconduct" and "gross negligence" on the part of the defendant Nelson though mixed inextricably—the principal theory being that of gross negligence.

Our statute, § 7283 of the Compiled Laws, defines "gross negligence" as consisting "in the want of slight care and diligence."

Section 7281 of the Compiled Laws defines "slight care or diligence" as "such as persons of ordinary prudence usually exercise about their own affairs of slight importance. . . ."

Section 7278 provides: "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears and except also that the words hereinafter explained are to be understood as thus explained."

Section 7279 provides: "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except when a contrary intention plainly appears."

As chapter 184 of the Session Laws of 1931 makes no attempt to define the term "gross negligence" or the term "wilful misconduct," the general statutory definitions apply.

This court has had occasion heretofore to consider the definition of

the term "gross negligence," and in Farmers' Mercantile Co. v. Northern P. R. Co. 27 N. D. 302, 146 N. W. 550, we show that: "Gross negligence is, to all intents and purposes, no care at all. It is the omission of the care which even the most inattentive and thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically wilful in its nature. It is an omission of duty which is akin to fraud. It is the absence of even slight care."

In Schwager v. Anderson, 63 N. D. 579, 249 N. W. 305, we had occasion again to interpret the statutory definitions of the terms involved.

In both cases we show that under our law gross negligence consists in the absence of slight care or diligence, and in the latter case a clear distinction is drawn between gross negligence and ordinary negligence. In neither case, however, does this court intimate there never can be a case of gross negligence.

Under the statute there are the three classes of negligence—gross, ordinary, and slight, and distinctly defined. This distinction intimates clearly that the grade of negligence is determined by the facts in the case and, as pointed out in the first case cited, "the question of negligence . . . is primarily and generally a question of fact for the jury. It becomes one of law, and is withdrawable from the jury only when but one conclusion can be drawn from the undisputed facts. If the undisputed facts are of such a nature that reasonable men might draw different conclusions or deductions therefrom, then the question of negligence must be submitted to the jury. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Thomp. Neg. §§ 3790, 3791; Kunkel v. Minneapolis, St. P. & S. S. M. R. Co. 18 N. D. 367, 121 N. W. 830; Rober v. Northern P. R. Co. 25 N. D. 394, 142 N. W. 22." 27 N. D. 302, at page 318, 146 N. W. 550.

The difficulty of determining the precise limitations of each degree is recognized by the Supreme Court of the United States. In The New World v. King, 16 How. 469, 472, 14 L. ed. 1019, 1021, this court says: "The theory that there are three degrees of negligence, described by the terms slight, ordinary, and gross, has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice.

Their meaning is not fixed, or capable of being so. One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances, to whose influence the courts have been forced to yield, until there are so many real exceptions that the rules themselves can scarcely be said to have a general operation. In Storer v. Gowen, 18 Me. 177, the Supreme Court of Maine says: 'How much care will, in a given case, relieve a party from the imputation of gross negligence, or what omission will amount to the charge, is necessarily a question of fact, depending on a great variety of circumstances which the law cannot exactly define.' Mr. Justice Story, Bailments, § 11, says: 'Indeed, what is common or ordinary diligence is more a matter of fact than of law.' If the law furnishes no definition of the terms gross negligence, or ordinary negligence, which can be applied in practice, but leaves it to the jury to determine, in each case, what the duty was, and what omissions amount to a breach of it, it would seem that imperfect and confessedly unsuccessful attempts to define that duty had better be abandoned."

This difficulty is also recognized by the Supreme Court of Wisconsin in Astin v. Chicago, M. & St. P. R. Co. 143 Wis. 477, 128 N. W. 265, 268, 31 L.R.A.(N.S.) 158: "The third degree of negligence is gross negligence, so-called. It has for its name somewhat of a misnomer, in that the fault is not characterized by inadvertence, in the lexical sense, at all. As in the first and second degrees such element must be present and dominant, in the third it must be absent. The wrong is characterized by an absence of any care on the part of a person having a duty to perform to avoid inflicting an injury to the personal or property rights of another, by recklessly or wantonly acting or failing to act to avoid doing such injury, evincing such an utter disregard of consequences as to suggest some degree of intent, to cause such injury."

It will be noted this does not go so far as to say "gross negligence" means that the person formed the deliberate intent of injuring the other person. It merely goes to the extent of saying that the acts complained of were done recklessly, in such total disregard of danger which should have been anticipated as a probable and almost inevitable result of the acts, and a total indifference to its effect upon the plaintiff. That it probably would have the same effect upon himself is to be con-

sidered in determining the mental attitude, and yet it is well known that a person may act in such a grossly negligent manner that he ought to know he would probably be severely injured himself; hence the effect upon himself is a matter for the jury to consider.

While our statute furnishes definitions of such terms, nevertheless it is left to the jury "to determine, in each case, what the duty was and what omissions amount to a breach of it."

The memorandum opinion of the trial court, made upon the motion for judgment notwithstanding the verdict or a new trial, thoroughly discusses this issue and cites numerous cases from other jurisdictions wherein it was held the driver of a car was not guilty of gross negligence. But the situation to be determined must always depend upon the facts and circumstances in the individual case. As pointed out, in Morris v. Erskine, 124 Neb. 754, 248 N. W. 96, the term "gross negligence" must not be defined in such a drastic manner that it loses all meaning:

"The term 'gross negligence' has received the attention of many courts, with conflicting views as to its proper definition. The courts of some of the states appear to hold that, to constitute gross negligence, there must have been an intentional failure to perform a manifest duty, or the injury must have been inflicted intentionally, or in wanton disregard of the rights of others. Other courts have defined it less drastically.

"We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different con-

clusions therefrom, then a question of fact is presented for the jury to determine. Where a question of fact has been submitted to a jury upon conflicting evidence, this court, ordinarily, will assume the truth of the evidence tending to sustain the finding of the jury. In the light of these principles, we will now consider the evidence in this case."

We had occasion to comment on this holding of the Nebraska court in the case of Posey v. Krogh, 65 N. D. 490, 259 N. W. 757.

As human conduct varies with the individual, and it is almost impossible to get identical sets of circumstances, the citations by respondent, showing cases where negligence was not considered gross negligence, such as the Michigan cases of [Van Blaircum v. Campbell, 256 Mich. 527, 239 N. W. 865; Wyma v. Van Anrooy, 260 Mich. 295, 244 N. W. 478; Schlacter v. Harbin, 273 Mich. 465, 263 N. W. 431; McLone v. Bean, 263 Mich. 113, 248 N. W. 566, the Nebraska case Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689, the Minnesota case of Dakins v. Black, 195 Minn. 91, 261 N. W. 870, the Iowa case of Wilson v. Oxborrow, 220 Iowa, 1135, 264 N. W. 1, and other cases are of little value to us.

This court has never construed the term "gross negligence" so as to preclude an injured person from recovery under any and all circumstances. That one degree of negligence may shade into another so as to make it difficult to state to what class the result of the acts, neglect and misconduct, of the negligent person belong, merely adds to the difficulty of the plaintiff in the case in sustaining the burden of proof. The burden of proof of showing gross negligence rested upon her in this case. However, where there is a question whether the acts are such as to place the defendant in the category of one guilty of gross negligence or the class of one guilty of ordinary negligence, the matter should be submitted to the jury as the jury must determine to which class the defendant belonged. It is only when but one conclusion can be drawn from undisputed facts the matter becomes a question of law, for if reasonable men may differ as to the classification of the defendant, then the question must be submitted to the jury and the verdict of the jury thereon is determinative of that issue.

In determining this issue the testimony most favorable to the plain-

tiff must be taken as the situation upon which we must base whether but one conclusion can be drawn.

The testimony shows that at about 8:30 P. M. of September 28 the plaintiff and the defendant Nelson were driving in a Ford car and on reaching Highway No. 10 near Buffalo turned east. The plaintiff testifies that it had been raining that afternoon and "was still misting terribly. It would rain and then stop and then rain again. I believe it was misting at that time." She said she was trying to look out of the window and she could not see anything. The defendant was driving between fifty-five and sixty miles an hour, "close to sixty," and she says she complained to him about the speed and told him he "had better slow up a little because it is hard to see." When cars passed them the water and mud would splash up on the windshield. The defendant declined to slow up, saying, "there was nothing to be afraid of." He kept up the same rate of speed, and she spoke to him again a little later. When they got to the highway south of Mapleton she said, "I couldn't see at all out of my side of the windshield so I spoke to him and asked him to drive slower again, and he said it was alright and he said I am going hunting again tomorrow and I would like to get home and call the boys up." She said he refused to slow up after this second protest and it was shortly after that the collision took place. After trying to look out on her side of the windshield, she "looked over on his side where the windshield wiper was and it was working but it wasn't very easy to see." At this point, and while running about sixty miles per hour, they caught up with the defendant Delger, who was driving a Graham truck weighing about 6,500 lbs. He had a load of sheep weighing over 7,000 lbs. and was travelling at a speed of fifteen or twenty miles an hour because it had been raining and the condition of visibility was such that he had "got off the road before." There was water splashing on the windshield and the windshield was covered with fine dirt and water so that he had to open his door and drive by looking out on the side. While his windshield wiper was working, "it looked kind of messy when it was working," that is that it would streak the windshield so he couldn't see out. He was travelling on the south side of the road and going east in this kind of weather and under these conditions when the collision took place. The first thing he knew was the shock of the collision. When he stopped he

found the Ford car was hanging on the back of the truck. His truck was badly damaged. The force was such that his truck rolled about a hundred feet before it stopped and he could get out. The force of the collision was such that the Ford car was driven into the rear of his truck and caught on his tire chains. Part of the hood of the Ford car was under the truck. The rear end of the body of his truck was only a foot or two away from the windshield of the Nelson car. The visibility was such that he did not see the light of the Ford car that was approaching from the rear and didn't even know there was a car coming until the collision. He had no tail light on his truck. The force of the collision was such as to render both plaintiff and defendant immediately unconscious, and plaintiff testified she remained unconscious for about two weeks. Her stomach was ruptured, her lungs were injured, her nose was broken, and many of her teeth were broken and damaged. It is not disputed but what she was seriously injured.

The testimony offered by the defendant would tend to minimize some of these statements, particularly as to the condition of visibility; but the jury had the opportunity to weigh the testimony of all witnesses.

The defendant Nelson makes much of the fact that the defendant Delger had no tail light on his truck and argues that this is an important factor in determining that the negligence shown was merely ordinary negligence and not gross negligence, but common sense and experience should have taught and undoubtedly did teach the defendant that this was a condition he was apt to face and doubtless such condition might cause reasonable jury men to deliberate on whether the negligence shown was ordinary or gross under the climatic situation of the day.

If the testimony of plaintiff be true, the jury had a right to determine that the defendant was guilty of wilful misconduct in continuing at an excessive rate of speed under the conditions and over the protest of his guest. The record shows that the plaintiff and the defendant had been spending the afternoon hunting chickens and pheasants. They had gone on this trip together, they had brought their lunch with them, and the relation between the two was that of more than a casual guest and host. If the defendant acted as a person of ordinary prudence would usually act in his own affairs of slight importance, then he would show slight care, and the presence of such slight care would preclude

the idea of gross negligence. But if the defendant failed to show such care or diligence as a person of ordinary prudence would exercise about his own affairs of slight importance, then the defendant would be guilty of gross negligence.

The term "gross negligence" consists of the two words. As pointed out in Smith v. Postal Teleg. Cable Co. 174 Mass. 576, 55 N. E. 380, 381, 47 L.R.A. 323, 75 Am. St. Rep. 374, "negligence with reference to a given consequence means that the consequence ought to have been foreseen." Clearly in this case it is for the jury to determine whether the defendant should have foreseen such consequence, and the term "gross" when attached thereto has reference to the mental attitude of the defendant with reference to the consequences which he should have foreseen. It implies such gross recklessness as shows an utter indifference to consequences which must have been in the mind of the actor.

The whole matter was submitted to the jury in a fair and impartial manner and under proper instructions—instructions to which no exception was taken except it is claimed there was error in instructing "Now, we will come to the question of the negligence of the defendant, Carl H. Nelson. In the first place, our statute says: Any person driving a vehicle on a highway should drive the same at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person. The statute provides also that when the vision is clear, the highway unobstructed, you can see on ahead, you can drive at the rate of 50 miles per hour. And you can even drive faster if you can see ahead and you have the situation in hand and know by driving faster you will not be endangering the life, limb or property of others.

. . .

"Now, in this case should you, however, find from the evidence in view of the conditions of the night and the circumstances which the evidence has here pointed out, if anything, that the defendant, Nelson, was grossly negligent in driving on that highway in a manner that would appear to you from the evidence here, that he was grossly negligent and that such gross negligence was the proximate cause of this impact and collision and resulting injury to this plaintiff, then she

would be entitled to a verdict as against the defendant, Nelson, but not as against the defendant, Delger. That would be so, members of the jury, because if Mr. Nelson's gross negligence was the sole proximate cause of this impact and collision and resulting injury, then the defendant, Delger, would not be liable because as I have said the sole proximate cause of the negligence is chargeable to Mr. Nelson. That is so for another reason. If you should find that the gross negligence of the defendant, Nelson, if such has been proven by fair preponderance of the evidence, was the sole proximate cause of this collision, impact and resulting injury to the plaintiff, then and in that case the defendant, Delger, would not be liable because the plaintiff would be guilty of contributory negligence as to him. If you should find that situation to exist, however, and find that the defendant, Delger, is exonerated, does not mean that the defendant, Nelson, is also exonerated. For in that case if the gross negligence of the defendant, Nelson, was the sole proximate cause of the collision and resulting injury then the plaintiff would have to look to him for her right to recover, if any she has. . . .

"You can allow the full amount or so much less as you believe the plaintiff is entitled to recover, on down to a dollar or even a penny. Those are matters for you, not for me," and here no error therein is shown. The definition as given by this court in Schwager v. Anderson, 63 N. D. 579, 249 N. W. 305, supra, was given to the jury. It cannot be said that reasonable men could draw but this one conclusion—that the defendant was exercising slight care and diligence at least. There is nothing to indicate that the jury were not reasonable men, and they came to the conclusion that the facts in this case showed gross negligence. The experienced trial court is of the same opinion and in his memorandum opinion states that, "Under all the facts and circumstances in this case, the question of whether the defendant Nelson was guilty of gross negligence is, so it seems to me, a question of fact for the jury to determine." We are satisfied that this was correct, and so the verdict of the jury is determinative of this issue.

The next main issue involves the result of the question of liability insurance being brought into the case.

The record shows that defendant cross examined the plaintiff as to the strength of her recollection at the time of the trial as compared with

her recollection of events shortly after the accident. To weaken her credibility, he offered Exhibit 1 in evidence—a statement in the handwriting of one Mr. Moe and signed by the plaintiff. We find therein, "I was sitting in the front seat of the car and must have been dozing and paid no attention to the road or to the car. I do not remember of meeting any cars or seeing anything in the road ahead and do not know how the accident happened. I cannot remember very clearly anything that occurred on the afternoon or evening of September 28, 1934 as it all seems very hazy to me now." There were other statements made, but this is the main portion used in an attempt to impeach her recollection. She stated that her recollection was much stronger on the trial than it was at the time she signed Exhibit 1. The exhibit was offered in evidence by the defendant and read to the jury. Defendant made no inquiry as to accuracy of the exhibit, its fulness, whose language it contained, the conditions under which it was given, or similar circumstances.

On redirect examination her counsel examined her relative to this Exhibit 1, and she stated that it was signed shortly after she got back from the hospital. On the day of the signing she was lying down. She was asked, "Who was it that presented himself there at that time?" and her answer was, "Mr. Moe presented himself as an insurance adjuster. He represented himself as an insurance adjuster." Immediately the jury was excused and counsel for the defendant made this record—that he excepted to this "answer of the defendant (plaintiff?) to the foregoing question as not being responsive to the question, as being highly prejudicial, and contrary to the practice in this jurisdiction with regard to the trial of personal injury actions. And at this time the defendant, Carl H. Nelson, moves the court that the trial of this action be declared a mistrial in so far as the defendant, Carl H. Nelson, is concerned, upon the ground that the plaintiff has testified in the presence of the jury to the effect that the defendant, Carl H. Nelson, is protected against her claim herein by liability insurance and has made statements that convey that information to the jury which are highly prejudicial and under the law of this jurisdiction have been established as consideration for a mistrial." Clearly this is an exaggeration of the situation.

When the trial was resumed the court denied the motion. Her coun-

sel questioned her further with reference to this Exhibit 1, plaintiff was then asked, "What did he ask you? What did he say he came there for?" An objection to this question was sustained. Her counsel advised her—"Don't say anything about whom he represented or anything. Just what he said to you, what he came for," and plaintiff replied, "He said he came to find out about the accident and how it happened. And what happened." She was asked, "What did you say?" She told him she "was very ill and that I didn't really feel like talking about it. He seemed to insist on knowing about it." When he insisted and asked her a few questions, she said she "didn't feel like talking to him." She says, "I told him I couldn't remember about it and he asked me what I remembered and then he wrote this statement and asked me to sign it and said it was necessary for me to sign it and that I would get a settlement out of it." At this time the defendant excepted to this testimony "and particularly to the last statement made by the plaintiff to the effect that she was told that she would get a settlement if she signed this statement in question, and asks that a mistrial of this case be declared upon the ground that such statement is highly prejudicial and immaterial and an attempt to inject further into the records of this case the fact that liability insurance is carried by the defendant, Nelson." This motion was denied. But no where is it stated that Nelson carried insurance. This testimony was given before the case against Delger was dismissed and was as applicable to him as to Nelson. Delger had not been examined at this time as to whether he carried insurance. It is a fact that later he was asked if he had insurance on his truck and he answered "No." But this question was asked by his own attorney and objected to immediately by plaintiff and by defendant Nelson. It was stricken out and in addition the court specifically charged the jury—

"Members of the jury, one more thing comes to my mind. Some little matter came up here during the course of the trial with respect to insurance. Now, the jury should disregard that. Our Supreme Court has held that those things should not be in the case because they are likely to exercise an undue influence. That is the danger. Now, I don't know whether there is any insurance here or not. I haven't asked a soul, but, members of the jury, I will say to you to disregard that end of it and if you find here one or both of these men liable, find

them liable as individuals without regard to any insurance. It is the only way to do business. We have no more right to do an injustice, if there were any insurance, to an insurance company, than we would to an individual.

"Now, I have made this rather solemn statement because it may cause a miscarriage of justice unless the jury does follow my instructions upon the subject.

"Now, members, again I will say too, take this case, give it full and fair consideration and after you have done that, render such a decision as you believe is right and just on the evidence here. Leave all foreign matters out."

It is the contention of the defendant that plaintiff's answer was a subtle method used by her counsel to inject into the case the question of liability insurance and that it was not mere inadvertence or a casual statement on plaintiff's part which her counsel would not anticipate. In order to show that this was the animus, the record shows that when the defendant offered Exhibit 1 in evidence, or about that time, defendant's counsel spoke in an aside to the counsel for the plaintiff and suggested he caution his client "to not make any mention of the insurance because in the examination that I conducted it was more or less in regard to the exhibit." But plaintiff's counsel did not intend to thus sacrifice his client's interests and stated that "he proposed to ask her who took this statement and whom he represented. Proposed to bring out the fact that this statement was given at the plaintiff's house." Defendant's counsel warned him it would break up the lawsuit and his opponent replied that he would take his chances on that. Consequently, defendant says it was an intentional act on the part of the plaintiff. There is practically no dispute by the counsel as to the colloquy. But if the plaintiff had a right to show who it was that secured Exhibit 1, the interest which the person securing the exhibit had in the case, or his relationship to the controversy, then the fact that the counsel on the other side warned against it would be immaterial.

Exhibit 1 was introduced in evidence by the defendant himself in an attempt to impeach the plaintiff. Upon her admission that she had signed the exhibit, she had a right to show when and where and under what conditions she signed the exhibit. She had a right to show who

induced her to sign it, who wrote it out, who furnished the language, how complete and accurate it was, and what was said to her in order to induce her to sign the instrument. If in doing so it developed Moe told her that she would get a settlement if she would sign, this was a fact which she had a right to present to the jury in order to show all the circumstances surrounding the giving of the exhibit. It was a matter relevant to the issue and one of the burdens resting upon the defendant when he offered the exhibit to impeach the plaintiff. The defendant knew that the plaintiff was entitled to explain the giving of the instrument and what took place at that time with reference thereto. He tried to get the benefit of the exhibit shorn of an important feature —statements which Moe made to induce her to sign—and in this manner deprive the plaintiff of the right to show why she signed.

The defendant contends that because Exhibit 1 says, "I have read the above and it is true to the best of my knowledge and belief" and she does not now expressly claim fraud and does not show specifically that she had not made the statements contained in Exhibit 1, therefore she is deprived of any right to show the circumstances under which it was given.

To substantiate this contention defendant cites Brown v. Walter (C. C. A. 2d) 62 F. (2d) 798, but the case is not pertinent. In the Federal case the plaintiff attempted to bring out the fact on the cross examination of the defendant and the record shows there was no attempt to establish any contradiction between what defendant said to the agent and what he said on the stand. Later plaintiff's wife testified the defendant said he was insured and plaintiff did the same. Therefore, it was held incompetent and clearly it was.

Defendant argues that it is immaterial under what circumstances it was given if she admits it is a true statement as made by her at the time.

But in the case at bar the plaintiff is showing vital differences between the statements set forth in Exhibit 1 and her testimony which the defendant was attempting to impeach. The plaintiff shows that she had just come back from the hospital; she had been unconscious for two weeks; she was still weak physically and mentally; her recollection was still hazy; her senses had not yet cleared. On the trial of this case she related many matters not referred to in the exhibit and

makes direct and specific statements which impeach thoroughly some of the general statements made. It was for the jury to determine whether the possibility of recovery sharpened her wits and stimulated her recollection, or whether her recovery of mental health brought back to her mind from the subconscious reservoir the events as they actually happened. The jury was properly instructed as to the effect. The defendant did not ask the court to caution the jury as to the question of liability insurance and rested his case upon the theory that the situation was such that no subsequent act could cure the error alleged; but the court did charge thereon as related.

The trial court, in its memorandum opinion, shows that the new trial was granted solely on this issue and defendant urges that the granting or refusal of a new trial is a matter largely within the discretion of the trial court and his view of whether justice was rendered; that this action of the trial court shows he thought the question of insurance so affected the case as to raise more than a possibility a fair trial was lacking, and, therefore, his decision should not be reversed.

The ruling of the trial court on this matter is a matter of law. If it was error, it was an error of law. But there was no error of law in the action of the trial court with reference thereto. There was no motion to caution the jury or a request as to what the jury should do in a case where the fact of liability insurance becomes apparent. There is a vast difference between such a case as this where foundation for the proof is laid by the defendant himself and a case where the plaintiff goes out of his way and with no reason or excuse whatever injects the fact of liability insurance held by the defendant. Consequently, many of the citations by the respondent such as the Kentucky cases, Hedger v. Davis, 236 Ky. 432, 33 S. W. (2d) 311; Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S. W. 958; and the Washington case of Edwards v. Burke, 36 Wash. 107, 78 P. 610, are not applicable here. Where the plaintiff has the right to show the conditions under which an instrument was signed, the fact that incidentally thereto damage may accrue to the defendant's case does not deprive her of that right. The defendant offered the whole of the exhibit. He examined the plaintiff thoroughly as to her signature and the relative strength of her recollection on the dates indicated without asking her whether the statements were true, or were written as she made them,

and without in any way attempting to prove anything but her signature he argues now that it is immaterial who secured the signature so long as the defendant admits she signed the instrument. But this is too narrow a restriction of the plaintiff's rights. Her testimony already given varied materially from what the exhibit stated and defendant made no attempt to show the plaintiff dictated its contents or even knew its contents. The jury were entitled to know what was said and done at the time the instrument was signed in order to weigh it properly and determine how far it affected the testimony which the plaintiff was giving on the trial.

There was no error committed by the trial court in permitting this matter to go before the jury as it did. The order granting the new trial is not based upon the insufficiency of the evidence—this is shown by the memorandum opinion—but clearly upon this issue of law. Consequently, the new trial should not have been granted. The order granting the new trial is reversed and the judgment reinstated.

Burke, Ch. J., and Nuessle, Morris and Christianson, JJ., concur.