Teresa Johnson STEEL, Appellant,

v.

Donald DOWNS and Meva Corporation, a Foreign Corporation, Appellees.

No. 20448.

United States Court of Appeals, Eighth Circuit.

Jan. 21, 1971.

Rehearing Denied March 5, 1971.

Lowell A. O'Grady, Grand Forks, N. D., for appellant.

Robert Vaaler, Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, N. D., for appellees.

Before MATTHES, Chief Judge, LAY, Circuit Judge, and REGISTER, Chief District Judge.

PER CURIAM.

This is a diversity personal injury action arising out of a motor vehicle accident which occurred between one o'clock and two o'clock a. m., near Larimore, North Dakota, on July 2, 1965. Plaintiff, Teresa Johnson Steel, was a guest passenger in a pickup truck driven by the defendant Donald Downs. The truck had been leased by the defendant Meva Corporation and, at the time, Downs was an employee of Meva and concededly acting within the course and scope of his employment. Federal jurisdiction is derived from Title 28, Sec. 1332, U.S.C.A. (diversity of citizenship and amount in controversy).

The case was tried to a jury, the Honorable Ronald N. Davies presiding. After plaintiff had submitted her evidence and rested, the appellees moved for a directed verdict, which was denied. The appellees then presented their evidence; there was no rebuttal, and after all par-

ties had rested, the appellees renewed their motion for a directed verdict. The motion was granted. The trial court appointed a member of the jury as foreman and directed the entry of the verdict in favor of the defendants and against the plaintiff. The verdict was duly entered, following which judgment on the verdict was entered dismissing the action. This appeal was taken from the order granting the motion for directed verdict and from the verdict and judgment entered pursuant thereto.

The sole question presented on this appeal is whether the trial court properly granted the motion for a directed verdict. The motion raised the question of the sufficiency of the evidence to support a jury verdict. Under some circumstances it would be necessary for the appellate court to determine whether the state or federal test of sufficiency of the evidence to create a jury question is to be applied. The Supreme Court of the United States has left this question undecided, and the Circuits are divided on the question of whether federal courts should apply a federal rather than a state test in making such a determination.[1] In some instances the federal and state standards are nearly identical, and thus the problem of choosing between such tests is unnecessary. In this case there is no problem of choice, for this Court has specifically held that the North Dakota test and the Federal test are substantially the same. In Schultz & Lindsay Construction Company v. Erickson 352 F.2d 425 (1965), this Court, speaking through Chief Judge Matthes, stated (p. 430):

"* * * The federal courts and the North Dakota courts apply substantially the same standard in determining the sufficiency of the evidence. [Cases cited.] Both parties assumed that North Dakota law was to be applied. Therefore, we shall follow the standard which the Supreme Court of

North Dakota has enunciated in the following language:

'On a challenge to the sufficiency of the evidence to support the verdict this court will take the view of the evidence most favorable to the verdict, giving to plaintiff's evidence the strongest probative force of which it will admit and will draw therefrom such inferences and conclusions favorable to the jury's verdict as a reasonable consideration of the evidence will permit.' (Citations of authority). Stadick v. Olson's Hardware, 64 N.W.2d 362, 364 (N.D.1954).

This rule was discussed by our court, Judge Johnsen, in the case of United States Fire Ins. Co. v. Milner Hotels, Inc., 253 F.2d 542, 546-547 (8 Cir. 1958). He stated:

'In relation to what has been said, it must conformingly be borne in mind that under North Dakota law, as generally, negligence and proximate cause are not ordinarily questions which may be taken from the jury. "They become questions of law only when the state of the record is such that reasonable men can draw but one conclusion therefrom." ' Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11, 13; Geier v. Tjaden, N.D., 74 N.W.2d 361, 364.

'Negligence and proximate cause will become transformed from questions of fact into questions of law rather on probative deficiency than on probative abundance. Thus, no matter how strong the evidence of a party, who has the burden of establishing negligence and proximate cause as facts, may comparatively seem to be, he is not entitled to have those facts declared to have reality as a matter of law, unless there is utterly no rational basis in the situation, testimonially, circumstantial-

[1]. For a discussion of this problem, and a comprehensive list of the decisions of the various Circuits as to what standard should be applied, see Boeing Company v. Shipman, 411 F.2d 365, 368 et seq. (5 Cir. 1969). See also: Wratchford v. S. J. Groves & Sons Company, 405 F.2d 1061, 1064 (4 Cir. 1969).

ly, or inferentially, for a jury to believe otherwise. Nor is a court required to set aside a verdict in such a situation, just because the judgment of the jury may have been strange and unusual on the evidence in the case.'

The federal standard for the sufficiency of *circumstantial* evidence (as set out in Wray M. Scott Co. v. Daigle, [309 F.2d 105], supra) is also basically the same as that adhered to by the North Dakota courts and discussed in Smith v. Knutson, 76 N.D. 375, 36 N.W.2d 323, 327 (1949):

' * * * "The most direct and positive testimony may be completely demolished by circumstantial evidence, or overcome in the minds of a jury or the mind of a court by the establishment of other facts inconsistent therewith." ' In Paulsen v. Modern Woodmen of America, 21 N.D. 235, 243, 130 N.W. 231, 234, this Court said:

' "Ordinarily the question of what inferences are deducible from the evidence is peculiarly a question for the jury, and it is only in rare instances that the court is justified in determining such question as a matter of law. If it can be said that reasonable men may fairly differ as to the inferences to be deduced from all the circumstances disclosed, it is a proper case for the jury." ' "

See, also, Parke-Davis & Co. v. Stromsodt, 411 F.2d 1390 (8 Cir. 1969), and Trapp v. 4–10 Investment Corporation, 424 F.2d 1261 (8 Cir. 1970). It is also clear from respective briefs that counsel for both parties are in substantial agreement as to the proper test to be applied, and are in accord with the view of this Court that the State of North Dakota standard and the Federal standard are substantially similar.

Consideration and discussion of certain portions of the evidence, as disclosed by the record, is, of course required. The law is well established that "The credibility of the witnesses and the weight to be given to their testimony are questions of fact for the jury to determine" (Degenstein v. Ehrman, N. D., 145 N.W.2d 493, 504), and "The trier of the facts is not required to accept the uncontradicted testimony of an uncorroborated interested party, although such testimony is not contradicted by other testimony." *Degenstein,* supra, at page 512. Such evidence must be considered in the light of the applicable standard and controlling rules of law. Although we have carefully examined the entire record (including the transcript of testimony and all exhibits received), only those portions of the evidence which are pertinent to the problem before us will be discussed in detail.

Since all parties concede that appellant was a guest in the motor vehicle at the time of the accident, we are concerned with specific provisions of the so-called "guest statutes" which were in force and effect at the critical time. Those statutes (being a part of the North Dakota Century Code) are as follows:

*"39–15–02. Liability for injury to or death of guests.*—Any person who as a guest accepts a ride in any vehicle moving upon any of the public highways of this state, and who while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. In the event that such person while so riding as such guest is killed or dies as the result of an injury sustained while so riding as such guest, then neither the estate nor the legal representatives nor heirs of such guest shall have any right of recovery against the driver or owner of said vehicle by reason of the death of such guest. If such person so riding as a guest is a minor and sustains an injury or is killed or dies as a result of injury sustained while so riding as such guest, then the parents, guardian, estates, legal representatives, and heirs of such minor shall have no right of recovery against the driver or owner or person responsible for the operation of said vehicle for injury sustained or

as a result of the death of such minor."

*"39–15–03. When driver of motor vehicle liable for injury or death.*—The provisions of this chapter shall not be construed as relieving the owner, driver, or person responsible for the operation of a vehicle from liability for injury to or death of a guest proximately resulting from the intoxication, willful misconduct, or gross negligence of such owner, driver, or person responsible for the operation of such vehicle. In any action for death or for injury or damage to person or property by or on behalf of a guest or the estate, heirs, or legal representatives of such guest, the burden shall be upon the plaintiff to establish that such intoxication, willful misconduct, or gross negligence was the proximate cause of such death, injury, or damage."

Plaintiff neither alleged nor claimed intoxication or willful misconduct on the part of either of the defendants. Her right to recover is based upon claimed "gross negligence" of defendant Downs in the operation of the vehicle as proximately causing her injuries. It is clear that the plaintiff has the burden of proving that the acts or omissions complained of on the part of defendant Downs constitute gross negligence. As the term "gross negligence" is not defined in the automobile guest statute, the general statutory definition applies. Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873. The general statutory definition is contained in Sec. 1–01–17, NDCC, which provides:

*"Degrees of negligence—Definition.* —Slight negligence shall consist in the want of great care and diligence, ordinary negligence, in the want of ordinary care and diligence, and gross negligence, in the want of slight care and diligence."

In *Jacobs,* supra, the Supreme Court of North Dakota carefully discussed the three classes of negligence defined in the statute and the difficulty of determining the precise limitations of each degree. The court recognized that the situation to be determined must always depend upon the facts and circumstances of the individual case, and made the following significant comments (p. 877):

"This court has never construed the term 'gross negligence' so as to preclude an injured person from recovery under any and all circumstances. That one degree of negligence may shade into another so as to make it difficult to state to what class the result of the acts, neglect, and misconduct of the negligent person belong merely adds to the difficulty of the plaintiff in the case in sustaining the burden of proof. The burden of proof of showing gross negligence rested upon her in this case. However, where there is a question whether the acts are such as to place the defendant in the category of one guilty of gross negligence or the class of one guilty of ordinary negligence, the matter should be submitted to the jury, as the jury must determine to which class the defendant belonged. It is only when but one conclusion can be drawn from undisputed facts the matter becomes a question of law, for, if reasonable men may differ as to the classification of the defendant, then the question must be submitted to the jury and the verdict of the jury thereon is determinative of that issue.

In determining this issue, the testimony most favorable to the plaintiff must be taken as the situation upon which we must base whether but one conclusion can be drawn."

Late in the evening of July 1, 1965, plaintiff met Richard Collins at a drive-in in Larimore, North Dakota. Collins was an employee of defendant corporation, was acquainted with plaintiff, and invited her to ride with him in a pickup truck belonging to his employer to view a ballistic missile base site located about seven miles west of Larimore. She accepted. Collins drove directly to the missile site. After plaintiff and Collins looked over the site for a few minutes, they reentered the vehicle to return to Larimore and discovered that the truck

was "stuck." Since they were unable to move the truck, Collins summoned help by use of a two-way radio. A fellow employee, defendant Downs, responded and in a short time, after receiving advice from Collins as to the location of the mired truck and experiencing some difficulty finding it, arrived at the site. Downs was driving a 1965 Chevrolet quarter-ton pickup truck owned by defendant corporation. Collins and Downs discovered that the rear wheels of the Collins' truck were off of the road, down on the shoulder of the access road, and were unsuccessful in efforts to free the truck. It was decided that Downs would take the plaintiff and Collins in to Larimore. They all got into the Downs vehicle and started for Larimore. Downs was driving, Collins was on the right side near the door, and plaintiff was seated between Collins and Downs. It was after 1:00 a. m. when they left the missile site. Downs drove from the missile site access road to the county road and on the county road towards Larimore. The surface of the county road near the access road was gravel; this changed to a blacktop surface some distance before reaching the scene of the accident. Downs was not familiar with this road. The night was dark, the weather was warm, and the road surface was dry. The lights of the truck were on. Downs was smoking; the ash tray was in the center of the dash. The road had been straight and level and, before entering the curve where the accident occurred, was twenty-four feet wide. As the vehicle entered into a curve on the road, about three-quarters of a mile west of Larimore, Downs suddenly applied the brakes. The truck went into a skid, the driver lost control, and the vehicle eventually came to rest, upside down, in the ditch on the north side of the road. The driving surface of the blacktop in the area adjacent to the place where the truck came to rest was thirty-one feet in width.

All of the occupants of the truck were injured. Plaintiff suffered serious injuries, including a fracture involving the first lumbar vertebra and a comminuted fracture involving the left clavicle or collarbone.

Officer Siemieniewski, a member of the North Dakota Highway Patrol, received a call at approximately 2:15 o'clock a. m. of the day of the accident and arrived at the scene at approximately 3:00 o'clock a. m. He took various measurements and several photographs of the vehicle and of the roadway and ditch area. The officer's testimony concerning the measurements is undisputed and several of the photographs he took are in evidence as exhibits. One of the photographic exhibits is a view of the vehicle, upside down, in the ditch, as it was when the officer arrived, and it, and other exhibits, show that the vehicle was generally badly damaged and the cab crushed in. Other photos show debris and skidmarks on the road surface and matted grass and gouge marks and other marks in the ditch area leading from the roadway to the vehicle. According to the officer's testimony the distance of the marks on the blacktop surface of the road to the edge of the road was approximately 125 feet; from the edge of the road there were marks in the grass for approximately 97 feet; then followed approximately 14 feet of matted grass, seven feet of deep gouge marks into the ground, another eight feet of matted grass, another deep mark in the ground of approximately sixteen feet in length, and then approximately fifty-two feet of matted-down and rolled-up grass to the place where the vehicle came to a complete stop. Thus, the vehicle, after leaving approximately 125 feet of uninterrupted tire skidmarks on the surface of the road, traveled for an additional distance of approximately 194 feet in the ditch and over such distance left gouge, skid and roll marks in the grass and ground.

Downs testified that during the trip and just before the application of the brakes he was traveling from forty to forty-five miles per hour. Plaintiff testified that just before the application of the brakes she attempted to look over at

the speedometer but could not see it; that just as she was looking, the brakes were applied so as to cause her head to go back. She testified she thought her head hit the back of the cab and she remembered nothing more until she was lying in the ditch.

The evidence is undisputed that a speed limit sign designating 40 miles per hour as the maximum speed for this portion of the road was posted on the south side of the road about 200 yards west of the curve on which the accident occurred, and that a warning "Curve" sign was posted on the road east of the speed limit sign but some distance west of the scene of the accident. This was the only curve in the road between the missile site and Larimore, and the road was level.

It was stipulated that on August 16, 1965, before the County Court of Grand Forks County (in which county the scene of the accident is located), Downs entered a plea of guilty to a charge of failure to use required care in the operation of a motor vehicle on July 2, 1965.

Section 39–09–01, NDCC, provides:

"*Care required in operating vehicle.* —Any person driving a vehicle on a highway shall drive the same in a careful and prudent manner having due regard to the traffic, surface and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway in a manner to endanger the life, limb, or property of any person."

During the trip the headlights on the truck were on. Downs testified in response to the question " * * * did you have your headlights on high or low beam when you left the missile site?" that "As a guess I would say they were on high." He further testified in response to the question "And with the headlights on high beam on the vehicle how far ahead of the vehicle would they shine or give you visibility?", that "As a guest I would say between 40 to 60 feet," and also testified that, with the headlights on low beam he could prob-

ably see about twenty to thirty feet ahead of the vehicle.

Section 39–21–20, NDCC, provides:

"*Multiple-beam road-lighting equipment.*—Except as hereinafter provided, the head lamps or the auxiliary driving lamp or the auxiliary passing lamp or combination thereof on motor vehicles other than motorcycles or motor-driven cycles shall be so arranged that the driver may select at will between distributions of light projected to different elevations and such lamps may, in addition, be so arranged that such selection can be made automatically, subject to the following limitations:

1. There shall be an uppermost distribution of light, or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of at least three hundred and fifty feet ahead for all conditions of loading.

2. There shall be lowermost distribution of light, or composite beam, so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least one hundred feet ahead; and on a straight level road under any condition of loading none of the high-intensity portion of the beam shall be directed to strike the eyes of an approaching driver.

3. Every new motor vehicle, other than a motorcycle or motor-driven cycle, registered in this state, which has multiple-beam road-lighting equipment shall be equipped with a beam indicator, which shall be lighted whenever the uppermost distribution of light from the head lamps is in use, and shall not otherwise be lighted. Said indicator shall be so designed and located that when lighted it will be readily visible without glare to the driver of the vehicle so equipped."

It is clear, from Downs' testimony, that he was in violation of the foregoing statute and that his plea of guilty above referred to constitutes an admission against interest.

■ It is established law in North Dakota that a violation of a statutory duty is evidence of negligence, although not negligence as a matter of law. Glatt v. Feist, 156 N.W.2d 819, 829 (N. D.1968).

Borstad v. LaRoque, 98 N.W.2d 16 (N.D.1959), was an action by a guest passenger for personal injuries received in a one-car upset in which plaintiff charged defendant with driving at a high and reckless rate of speed while under the influence of intoxicating liquor, and in a grossly negligent manner. The defendant pleaded that plaintiff was contributorily negligent and had assumed the risk. The case was tried to a jury which returned a verdict for the defendant. During the trial the testimony established that as a result of the accident in question the defendant had been charged with the crime of driving a motor vehicle too fast for conditions and that the defendant pleaded guilty to this charge. The Supreme Court of North Dakota stated, at page 26:

> "In a civil action arising out of a motor vehicle accident, evidence of the Defendant's plea of guilty to a criminal charge arising out of the same accident constitutes an admission and may be received in evidence as proof of the alleged wrongful conduct upon which liability is predicated. Of course, the evidence is not conclusive and may be explained."

The same Court, in Renner v. Murray, 136 N.W.2d 794 (N.D.1965), quoted (p. 796) with approval from Book v. Datema, 256 Iowa 1330, 131 N.W.2d 470 (1964), at page 471, as follows:

> "The general rule is that the record of a conviction or acquittal in a criminal prosecution is not admissible in evidence in a civil action to establish the truth of the facts on which it was rendered. * * * However, an exception to this rule is that the record in a criminal case showing a plea of guilty is admissible in a subsequent civil action against the accused arising out of the same offense, as his deliberate declaration or admission against interest."

> "The clear trend of authorities is that evidence of a guilty plea is admissible against a party in a subsequent civil proceeding but that it may be explained and is not conclusive, the weight of the evidence being for the trier of the facts." State Farm Mutual Automobile Insurance Company v. Worthington, 405 F.2d 683, 687 (8 Cir. 1968).

The record discloses that the only "explanation" of the circumstances under which the plea of guilty had been entered was the testimony of Downs, which in substance was to the effect that he appeared in court as a result of the accident, that Officer Siemieniewski was present, that he (Downs) was not represented by an attorney, that he does not remember whether or not he entered a plea and that he was there for about ten minutes.

After testifying that as he approached the area where the accident occurred he did not remember whether he saw a curve sign and did not remember seeing any speed control sign on the road, Downs testified, in response to the question "Will you tell us what happened causing it (the vehicle) to leave the road and roll over?" as follows: "Well, as we were driving along, a small animal of some type shot out from my right; and I panicked, or I hit the brakes and I cut the wheel; and I lost control of the vehicle, and I attempted to regain the control of the vehicle and went down into the ditch."

He then testified that this small animal shot out from the left, the driver's side of the road, that when he first saw the animal it was just entering the road surface at that point, that it was within the scope of his headlights, and that, at the time, he was driving the vehicle on the right side of the road. He further testified that, at the time, he did not see any other vehicles on the roadway and there were no other lights.

Plaintiff testified that while she was in the hospital Downs visited her on two occasions and that on the first occasion he said to her, "I told you before there was an animal that came on the road, but there wasn't." At trial Downs denied making such a statement to the plaintiff. This is Downs' sole explanation concerning the cause of the accident and was vital to the defense. Viewed in the light most favorable to plaintiff, it was within the province of the jury to have disbelieved Downs' trial testimony, to have believed plaintiff's testimony concerning the statement referred to, to have concluded that such statement was true, and thus, in effect, to have eliminated from their consideration Downs' explanation.

Plaintiff also testified that during the trip Downs was smoking a cigarette and was continually flicking the ashes into the ash tray which was in front of her on the dash. She also testified that throughout the trip Downs and Collins were engaged in conversation and that during such conversation Downs occasionally looked over at Collins. Downs testified he did not remember whether he saw the curve sign and did not remember seeing the speed control sign. Viewed in the light most favorable to the plaintiff, the jury might have found that a proximate cause of the accident was Downs' voluntary and deliberate inattention to the highway. The Supreme Court of North Dakota in Rubbelke v. Jacobsen, 66 N.D. 720, 268 N.W. 675, 677 (1936), said:

"Where the driver voluntarily and deliberately directs his attention elsewhere than to the highway upon which he is driving and as a proximate result of his inattention, even though momentary, an accident occurs, the question of gross negligence is for the jury."

This rule was approved by the Court in the later case of Sheets v. Pendergrast, 106 N.W.2d 1, 5 (N.D.1960).

The only testimony concerning speed was Downs' testimony that he was driving from forty to forty-five miles per hour and plaintiff's testimony that she did not know what speed they were going. Viewed in the light most favorable to plaintiff and assuming all conflicts in the evidence were resolved in favor of plaintiff, the jury, after considering the circumstantial and physical evidence disclosed by other testimony and by the exhibits, might have found that Downs' testimony was unworthy of belief and that the reasonable inferences to be drawn from such circumstantial and physical evidence were that as the vehicle approached the curve Downs was driving at such an illegal and excessive rate of speed that he was unable to negotiate the curve, and lost control after suddenly and forcibly applying the brakes, resulting in the accident.

"Negligence proximately causing the plaintiffs' damages, like any other fact, may be proved by circumstantial evidence." Mischel v. Vogel, 96 N.W. 2d 233, 236 (N.D.1959).

In North Dakota excessive speed, of itself, does not constitute gross negligence as that term is used in the guest statute. Holcomb v. Striebel, 133 N.W. 2d 435, 438 (N.D.1965). However, it is obvious from an examination of many of the North Dakota cases that speed is one of the major factors to be considered in determining the question of the existence of negligence, and, if any, its degree. Rettler v. Ebreck, 71 N.W.2d 759 (N.D.1955); Thieman v. Johnson, 257 F.2d 129 (8 Cir. 1958). See, also: Blashfield Automobile Law & Practice, 3rd Ed., Vol. 5, Sec. 213.23, pp. 196 & 197, and Sec. 213.27, p. 204, in which latter section the author states:

"Rounding curves or corners

Whether the driver's speed and conduct in approaching or traversing a curve or corner amounts to negligence, or to gross negligence, recklessness, or willful and wanton conduct, so as to render him liable to a guest in his vehicle, injured in consequence of it, is ordinarily, on sufficient evidence, a question of fact

for the jury, or the court sitting without a jury."

In *Rubbelke*, supra, a verdict of the jury in favor of a guest passenger against the host driver was sustained. The facts revealed that at the time of the accident the vehicle was traveling at a speed of 45 to 55 miles per hour on a straight highway. It was conceded that the defendant was not intoxicated and that the accident was not the result of willful misconduct. Plaintiff's cause of action was based squarely on alleged gross negligence. While determination of the question was based largely on voluntary and deliberate inattention, the Court stated the rule to be:

"In determining whether or not gross negligence exists, 'every act or omission entering into a particular happening must be considered in connection with all the other circumstances before the whole can properly be held to be an instance of gross negligence.'"

■ We are satisfied that the testimony of the witnesses and the other evidence concerning the physical facts and circumstances surrounding the accident, viewed in the light of the applicable controlling principles, presented controversial issues, including the issue of whether the proximate cause of the accident and resulting damages to plaintiff was the absence of slight care—gross negligence as that term is used in the guest statute—on the part of the defendant Downs, which issue was properly determinable only by the jury.

Reversed and remanded for new trial.

ON PETITION FOR REHEARING

PER CURIAM.

Appellees' Petition for Rehearing is based in substance upon the decision of the Supreme Court of North Dakota in Bjerke v. Heartso et al., 183 N.W.2d 496 (January 19, 1971), which was published shortly prior to issuance of our opinion in the above entitled case, but which was not released to the press until shortly thereafter. Petitioners contend that *Bjerke* is applicable and controlling, and that our opinion is at variance therewith. Petitioners vigorously urge that this Court "has overlooked or misapprehended the principle in North Dakota that circumstantial evidence will not suffice to prove gross negligence." We believe a brief analysis of *Bjerke*, and expression of our views, is advisable.

*Bjerke* was an outgrowth of a collision between two automobiles which resulted in the death of all three occupants of the vehicles. The complaint was based squarely upon alleged gross negligence of the defendant driver, and involved an application of the North Dakota Guest Statute (N.D.C.C., Chap. 39–15). A jury was waived, trial was had to the Court, and an appeal was taken from judgment in favor of plaintiff, with request for trial de novo before the North Dakota Supreme Court. In *Bjerke*, with reference to the facts, the Court stated:

"There were no surviving eyewitnesses. * * * We therefore are left with *only circumstantial evidence* to tell what happened." (Emphasis added.)

In *Bjerke*, the Court, in its pronouncement and interpretation of applicable North Dakota law, cited as precedent and support, the case of Holcomb v. Striebel (N.D.1965), 133 N.W.2d 435. *Holcomb* was an action brought by plaintiff for personal injuries incurred in an automobile accident in which she was riding as a guest, and was based on a claim of willful misconduct and gross negligence. That case also was tried to the Court without a jury. Judgment was entered dismissing the action. Plaintiff appealed and demanded a trial anew in the Supreme Court. At the time of the accident plaintiff was asleep. The *only evidence was circumstantial*. The Supreme Court's review was limited to the record, and the Court held that, from the record, the plaintiff had not sustained the burden of proving gross negligence. In re-

ferring to *Holcomb*, the Supreme Court, in *Bjerke*, stated:

"Here, as in the Holcomb case, the plaintiff's claim of gross negligence rests *solely upon the inferences to be found in circumstantial evidence.*" (Emphasis added.)

We believe the fundamental distinction between *Bjerke* and *Holcomb*, and the case before us, is clear. In each of the former cases proof of gross negligence rested solely upon circumstantial evidence. While Petitioners, in their Petition, assert "The Appellant's case is circumstantial," such assertion is inaccurate, as the record reveals both direct and circumstantial evidence.

As pointed out in our opinion, the Supreme Court of North Dakota, in Rubbelke v. Jacobsen, 66 N.D. 720, 268 N.W. 675, stated:

"In determining whether or not gross negligence exists, 'every act or omission entering into a particular happening must be considered in connection with all the other circumstances before the whole can properly be held to be an instance of gross negligence.'"

In Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873, at page 877, the Court said:

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. * * *."

In support of Petitioners' assertion that this case is circumstantial, a portion of our opinion which appears on page 16 thereof, is quoted as follows:

"Viewed in the light most favorable to plaintiff and assuming all conflicts in the evidence were resolved in favor of the plaintiff, the jury, after considering the circumstantial and physical evidence disclosed by other testimony and by the exhibits, might have found that Downs' testimony was unworthy of belief and that the reasonable inferences to be drawn from such circumstantial and physical evidence were that as the vehicle approached the curve Downs was driving at such an illegal and excessive rate of speed that he was unable to negotiate the curve, * * * resulting in the accident."

Immediately prior to such quoted portion, and constituting the first sentence of the paragraph containing the same, the Court stated:

"The only testimony concerning speed was Downs' testimony that he was driving from forty to forty-five miles per hour and plaintiff's testimony that she did not know what speed they were going."

Thus it is patently clear that the quoted portion of the opinion, which did contain a reference to circumstantial *and* physical evidence, related solely to and constituted a part of the Court's discussion as to the evidence concerning speed—which, of course, was only one of the circumstances for consideration in considering the existence of gross negligence.

In *Rubbelke*, supra, the Supreme Court of North Dakota said:

"Where the driver voluntarily and deliberately directs his attention elsewhere than to the highway upon which he is driving and as a proximate result of his inattention, even though momentary, an accident occurs, the question of gross negligence is for the jury."

The rule stated in *Rubbelke* was specifically approved and applied in Sheets v. Pendergrast, N.D., 106 N.W.2d 1, 5.

In the case before us there is a substantial amount of direct evidence from which the jury could find that the defendant driver did voluntarily and deliberately direct his attention elsewhere than to the highway—and that the accident was the proximate result thereof. Reference is made to such testimony by the plaintiff—which finds support in part in the testimony of the defendant driver himself. Such testimony is referred to in our opinion. This, and its effect in relation to the accident, were also circumstances which should be considered, with other circumstances, in

**320**

considering the question of gross negligence.

It would seem clear that there are vital factual distinctions between the case before us, and *Bjerke*, and that the cases are significantly distinguishable.

 Petitioners also call the attention of the Court to the comments in *Bjerke* as to the necessity of evidence of mental attitude to establish gross negligence. In *Bjerke* the Court said, inter alia, "Specifically lacking is evidence of mental attitude, which we heretofore have ruled necessary to establish gross negligence.", and quoted, as precedent and in support of such statement, from *Holcomb*, supra. This is not a new pronouncement by the Court, but has been the established law of North Dakota for many years, and at least as early as 1936. In that year, the Supreme Court in Jacobs v. Nelson, supra, discussed the meaning of the term "gross negligence" within the automobile guest statute, and, 268 N.W. at page 879, stated:

> "Clearly in this case, it is for the jury to determine whether the defendant should have foreseen such consequence, and the term 'gross' when attached thereto has reference to the mental attitude of the defendant with reference to the consequences which he should have foreseen. It implies such gross recklessness as shows an utter indifference to consequences which must have been in the mind of the actor."

Petitioners correctly state that the only *direct* evidence as to the mental attitude of the defendant driver is the latter's testimony. However, there is substantial relevant evidence, both direct and circumstantial, in the record as to the circumstances existing just prior to the accident, which may be properly considered by the jury concerning the existence of such requisite mental attitude. Proof of this essential element of gross negligence may be supplied by circumstantial evidence—proof of the acts and omissions of the defendant driver. That this is the law in North Dakota is obvious by the North Dakota Supreme Court's opinions in *Rubbelke,* supra, and *Sheets,* supra (N.D.1960). We are satisfied that the record discloses sufficient evidence pertinent to this element to require its submission to the jury.

Additional arguments submitted in the Petition for Rehearing will not be discussed, as we deem them to be without merit. We are convinced that *Bjerke* is significantly dissimilar to the above entitled case, that it is thus not controlling, and that our opinion is in accord with the applicable law.

Petition denied.